STATE OF NEVADA AND EDMOND McGOLDRICK, AS LABOR COMMISSIONER OF THE STATE OF NEVADA, APPELLANTS, v. THE CITY OF FALLON, A MUNICIPAL CORPORATION, AND CHURCHILL COUNTY, NEVADA, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENTS.

No. 14804

THE STATE OF NEVADA AND EDMOND McGOLDRICK, IN HIS REPRESENTATIVE CAPACITY AS LABOR COMMISSIONER OF THE STATE OF NEVADA, APPELLANTS, v. DOUGLAS COUNTY, NEVADA, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 14940

THE STATE OF NEVADA AND FRANK T. MacDONALD, AS LABOR COMMISSIONER OF THE STATE OF NEVADA, APPELLANTS, v. ELKO COUNTY SCHOOL DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 15206

August 24, 1984                    685 P.2d 1385

510

*Brian McKay,* Attorney General and *Pamela M. Bugge,* Deputy Attorney General, Carson City, for Appellants in Cases Nos. 14804, 14940 and 15206.

*John W. Diehl,* City Attorney, Fallon, and *William E. Cooper,* District Attorney, and *John S. Hill,* Special Deputy District Attorney, Churchill County, for Respondents in Case No. 14804.

*Brent T. Kolvet,* District Attorney, and *Stephen C. Balkenbush,* Chief Deputy District Attorney, Douglas County, for Respondent in Case No. 14904.

*Thomas L. Stringfield,* Elko, for Respondent in Case No. 15206.

*Paul H. Lamboley,* Northern and Southern Nevada Building Trades Councils, and Southern Nevada Heavy and Highway Committee, Amicus Curiae in Case No. 14804.

## OPINION

*Per Curiam:*

These cases, consolidated for purposes of this opinion, all arise from similar disputes over the manner in which the Labor Commissioner of the State of Nevada (Commissioner)[1] has

[1]During these proceedings, on February 1, 1983, Franklin T. Mac-Donald replaced Edmond McGoldrick as Labor Commissioner of the State of Nevada.

determined the "prevailing wage rate," or minimum wage which public bodies of this state are required to pay in contracts for public works projects, pursuant to NRS 338.020(1).[2] The respondents are "public bodies" subject to this statute, NRS 338.010(2),[3] and the Commissioner is charged with the statutory duty of enforcing this requirement. NRS 338.015(1).[4]

The gist of respondents' complaint against the Commissioner is that in establishing the "prevailing wage rate," the Commissioner has made no effort to determine the actual wage rates in their separate localities, but rather has merged all counties and cities in the state into two districts, northern and southern, and then effectively established the wage rate paid by urban contractors in Reno and Las Vegas who have signed collective bargaining agreements as the prevailing wage rates for those entire portions of the state.[5] Respondents include a school district, a city and two counties which are not in these metropolitan areas, and which contend that the actual prevailing wages in their localities are significantly lower than those determined by the Commissioner. They claim that despite their presentation of substantial evidence of such discrepancies to the Commissioner, whether in the form of surveys of local contractors, surveys of contractors bidding in their localities, statistics from surveys of the Nevada Employment Security Department, or actual bids submitted in alternative form,[6] the

---

[2]NRS 338.020(1) provides:

Every contract to which a public body of this state is a party, requiring the employment of skilled mechanics, skilled workmen, semiskilled mechanics, semiskilled workmen or unskilled labor in the performance of public work, must contain in express terms the hourly and daily rate of wages to be paid each of the classes of mechanics and workmen. The hourly and daily rate of wages must not be less than the rate of such wages then prevailing in the county, city, town or district in this state in which the public work is located, which prevailing rate of wages must have been determined in the manner provide in NRS 338.030.

[3]NRS 338.010(2) provides:

"Public body" means the state, county, city, town, school district or any public agency of this state or its political subdivisions sponsoring or financing a public work.

[4]NRS 338.015(1) provides:

The labor commissioner shall enforce the provisions of NRS 338.010 to 338.130, inclusive. When informed of violations thereof he shall report such violations to the district attorney of the county in which such violations occurred.

[5]The "southern district" includes Las Vegas and is composed of Clark, Esmeralda, Lincoln and a portion of Nye counties, while the rest of the state, including Reno, is considered the "northern district."

[6]For two public works projects in Elko County, for example, the school district requested two bids. "[I]n addition to the bid requested utilizing the

Commissioner refused to alter his determination of the prevailing wage rates in their localities or conduct public hearings regarding such rates, in violation of NRS 338.030(2).[7]

Respondents claim that as a result of the Commissioner's determinations their taxpayers are paying, or will pay, tens of thousands of dollars for artificially high labor costs in their public works projects. They have requested that prevailing wage rates for their particular localities be set by the Commissioner, and that hearings be held for that purpose, or that the Commissioner be enjoined from enforcing the rates derived from Reno and Las Vegas agreements in their localities.

The Commissioner, on the other hand, has refused to establish prevailing wage rates for such particular localities, contending that he is authorized by statute to set such rates for a "district" of his own designation. He further has contended that he is not obligated to conduct a hearing unless he is "in doubt" regarding a prevailing wage rate, and that he has never had such doubt.[8]

---

prevailing customary and reasonable wage rates established by you as the contractor, we would request that a second bid be prepared utilizing the prevailing wage rates established by the Labor Commissioner." Among the completed bids meeting specifications, discrepancies ranged from 4 to 23 percent, with an average difference of 10 percent in the total costs of the bids. The City of Fallon reported to the Commissioner a descrepancy of 22 percent in the total alternative bids of the winning contractor on a major public works project. It also submitted data showing that the wage rates established by the Commissioner were some 84 percent higher than the rates reflected in a survey of the Nevada Employment Security Department for listed construction jobs in "rural Nevada," after the latter were adjusted for inflation. Douglas County presented the Commissioner with the results of a survey of approximately 25 contractors bidding on Douglas County projects.

[7]NRS 338.030(2) provides:

When the labor commissioner is in doubt as to the general prevailing rate of per diem wage he shall hold a hearing in the locality in which the work is to be executed. Notice of the hearing shall be advertised in a newspaper nearest to the locality of the work once a week for 2 weeks prior to the time of the hearing. At the hearing, organizations such as the crafts affiliated with the state federation of labor or other recognized national labor organizations and the contractors of the locality or their representatives shall be heard. From the evidence presented the labor commissioner shall determine the general prevailing rate of per diem wage.

[8]In the Douglas County case (No. 14940), former Commissioner McGoldrick testified: "I'm of the opinion that, in order to be placed in doubt, I have to have some kind of formula so that I can justify that I'm holding a hearing." With regard to the division of the entire state into two districts, the former Commissioner testified: "That was a policy that I inherited. It's been there for 10 or 20 years, I heard. I can't explain it." The current Commissioner, Franklin T. MacDonald, testified in the Fallon/Churchill County Case (No. 14804) that he would consider himself

In the three cases presented on this appeal, the district courts each ruled in favor of the respondents and against the position of the Commissioner, characterizing his actions as arbitrary and capricious, or in violation of the statute. As a result, the Commissioner has been enjoined from enforcing against respondents the prevailing wage rate as set by his office in accordance with rates paid in two large "districts," rather than by local political subdivision, and upon evidence developed at public hearings in such localities. In Case No. 14804, the district judge declared null and void that portion of NRS 338.030(2) which limits the hearing requirement to circumstances in which the Commissioner is "in doubt."

The Commissioner has appealed the judgments, raising various procedural and substantial objections to the injunctions. We address the merits of his contentions as to the proper statutory authority of the Commissioner below. The Commissioner's objections to the form of the injunctions on the ground of lack of specificity do not merit discussion beyond the brief observation that we can see no justification for a remand for a clarification of the obvious. Withrow v. Larkin, 421 U.S. 35, 45-46 (1975). Appellant's other contentions, including the argument that no irreparable harm would result to the plaintiffs, in the face of their specific evidence of the substantial additional cost of on-going and imminent public works projects, which concededly would not be recoverable by the taxpayers should the Commissioner's rate be enforced, are similarly without merit.

In essence, the respondents below contended, and the district courts agreed, that the Labor Commissioner had exceeded his statutory authority by determing that a "district," for purposes of determining "prevailing wage rates" pursuant to NRS

"in doubt" so as to justify conducting a hearing "if there was overwhelming information that far exceeded the rates. In other words, if we had all of the employers that are in the area or that are going to be bid[ding] in the area, if their wage rates were quite different than the prevailing wage rate, then there would be doubt." With regard to the districts, MacDonald testified in the Elko County case (No. 15206) that "The two major areas which would have been your metropolitan areas in the north and the south were used as a base." He further testified that information about wages in these districts had previously been obtained simply by contacting contractor and labor organizations in these areas and inquiring as to the wages in their association contracts, but that he was endeavoring to broaden the inquiry by a mailing to all licensed contractors in the state, since by that time, as he put the matter, "[W]e've been in Court several times and this has prompted me to lay a trail, a paper trail, to make any determinations."

Chapter 338, might be composed of numerous counties, not
division of the entire state into two "districts," is in excess of
his statutory authority.
conforming to the boundaries of a public body or any recog-
nized political subdivision. We agree that the Commissioner's

The Commissioner has predicated his claim primarily upon
the language of NRS 338.020(1), which provides that the rate
of wages paid by a public body in a contract for public work
"must be not less than the rate of such wages then prevailing in
the county, city, town *or district* in this state in which the pub-
lic work is located." (Emphasis added.) We cannot join the
Commissioner in reading the term so broadly.

The definition of the term "district" as "a territorial division
(as of a nation, state, county or city) marked off or defined for
administrative . . . purposes," Webster's Third New Inter-
national Dictionary 660 (1976), denotes specific political or
administrative boundary lines. The term was added to the pred-
ecessor of NRS 338.020(1) in 1941, at the same time that the
Legislature added a new provision defining a "public body"
subject to the act as "the state, county, city, town, village,
school district or any public agency of this state or its political
subdivisions." 1941 Nev.Stat. ch. 139, secs. 2 and 3, at 390.

We find nothing in the statute which authorizes the Commis-
sioner to create amorphous "districts," covering vast geo-
graphic areas and including disparate communities stretching
far beyond the boundaries of any "locality in which the public
work is to be performed," as the unit within which the prevail-
ing wage is to be established. As was said by the Supreme Court
of New Mexico of a similar practice:

> The law does not give the defendant the power to set a
> minimum scale of what he thinks they should be, but *only*
> to determine the prevailing wages being paid in a munici-
> pality or political subdivision, and set them out in his
> order as the minimum wage to be paid. Here he made one
> order covering the entire state, thus finding the same wage
> scale prevailing in the severely depressed and boom coun-
> ties, which in itself, is sufficient to cast serious doubt on
> the bona fides of his action.

City of Albuquerque v. Burrell, 326 P.2d 1088, 1091 (1958). In
this case, as well, respondents were entitled to a determination
of the prevailing wage rates within their own boundaries.
Appellant acted arbitrarily and capriciously, and in excess of
his statutory authority, in making prevailing wage rate determi-
nations on the basis of "northern" and "southern" districts,
rather than for the local political subdivisions awarding public
works contracts.

Furthermore, we conclude that the refusal of the Commissioner to conduct hearings in these localities in accordance with the provisions of the statute was arbitrary and capricious. Respondents individually and collectively presented the Commissioner's office with evidence in support of their contentions that the wage rates established by his office did not accurately reflect the prevailing wage rates as actually paid in their communities, including their own wage surveys, the surveys of an independent state agency, and actual bids upon public works projects. In the face of such evidence, we hold that the assertion by the Commissioner that he was not "in doubt" as to the prevailing wage rates in these localities insufficient to deny the respondents the hearings to which they were entitled under the statute.

NRS 338.030(2) provides that "[w]hen the labor commissioner is in doubt as to the general prevailing rate of per diem wage he *shall* hold a hearing in the locality in which the work is to be executed." (Emphasis added.) The provision specifies the notice that must be given, and requires that organizations affiliated with state or national labor organizations, as well as the contractors of the locality or their representatives be heard. The statute further mandates that "*[f]rom the evidence presented* the labor commissioner *shall* determine the general prevailing rate of per diem wage." (Emphasis added.) The clear import of these statutory commands may not be avoided by the claim of the Commissioner that he subjectively lacks "doubt," regardless of the state of the evidence or objections presented to him and regardless of the inadequacy of his own prior investigations.

Under a similar statutory scheme, the commission charged with administration of a prevailing wage rate statute in Missouri had made an initial determination, similar to that made by the Commissioner here, based upon collective bargaining agreements of wide geographic application. City of Kennett v. Labor & Indus. Rel. Com'n, 610 S.W. 2d 623 (Mo. 1981). Upon due notice of objection by the City of Kennett that the preliminary determination did not reflect the prevailing wage in that city, however, the Commission undertook its own survey of wages in the locality, and scheduled a hearing at which both the Commission and the City presented their evidence. Under these circumstances, the Supreme Court of Missouri rejected the city's challenge to the Commission's determination. "It cannot be said that the Commission failed to consider wages paid generally in the county including wages paid on private construction projects, or that the Commission's decision was unsupported by substantial and competent evidence." *Id*. at 627.

The procedure employed by the Commissioner in this case stands in marked contrast to that approved by the Missouri court. Despite efforts to develop information on their own, respondents were not granted the opportunity to participate in hearings. Nor did the Commissioner make any effort to establish an evidentiary record in support of his determination of the prevailing rate in each locality, as required by the statute.

We hold that when interested parties have duly submitted objections to the prevailing wage rate as preliminarily determined by the Commissioner, and have accompanied such objections with independent evidence corroborating the assertion that there is a discrepancy between the established wage rate and the actual wage rate prevailing in the relevant local political entity or subdivision, the Commissioner is required, under the terms of NRS 338.030, to conduct a hearing as set forth in the statute, and to base his final determination upon the evidence presented at such hearing. We further note that the provisions of the Nevada Administrative Procedure Act governing a "contested case" apply to hearings so required. NRS 233B.032.[9] The Commissioner's failure in these cases to accept relevant evidence and to accord interested parties affected by his action a reasonable opportunity to be heard renders his action invalid as based upon unlawful procedure, Checker Cab v. State, Taxicab Authority, 97 Nev. 5, 621 P.2d 496 (1981), as well as invalid as in excess of his statutory authority. NRS 233B.140(5)(b) and (c).

Accordingly, we affirm the judgments below insofar as they enjoined the Commissioner from enforcing provisions of the prevailing wage law with regard to contracts of the respondents, until hearings are conducted in accordance with the mandate of the statute, and prevailing wage rates are established by the Commissioner for each relevant locality, on the basis of the evidence presented at such hearings. In light of our interpretation of the statute, we reverse the portion of the judgment in Case No. 14804, which declared the "in doubt" provision of NRS 338.030(1) to be null and void.

---

[9]NRS 233B.032 provides:

"Contested case" means a proceeding, including but not restricted to rate making and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, or in which an administrative penalty may be imposed.