PUBLIC SERVICE COMMISSION OF NEVADA, An Administrative Agency of the State of Nevada, Appellant and Cross-Respondent, v. SOUTHWEST GAS CORPORATION, a Nevada Corporation, Respondent and Cross-Appellant.

No. 12047

PUBLIC SERVICE COMMISSION OF NEVADA, An Administrative Agency of the State of Nevada, Appellant, v. SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, Respondent.

No. 12052

April 21, 1983                                      662 P.2d 624

[Rehearing denied August 30, 1983]

*Mills Lane,* District Attorney, *Thomas F. Riley,* Deputy District Attorney, Washoe County; *Zev Kaplan,* Carson City, for Appellant.

*Guild, Hagen & Clark,* Reno, for Southwest Gas, *Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell,* Carson City, for Nevada Industrial Customers.

*Vargas, Bartlett & Dixon,* Reno; *Lionel Sawyer & Collins* and *M. Kristina Pickering,* Reno; *Paul H. Lamboley,* Reno, for Sierra Pacific.

*Jones, Jones, Bell, LeBaron, Close & Brown,* Las Vegas, for Southern Cal Edison.

*Neyhart, Anderson, Nussbaum, Reilly & Freitas,* and *Sanford N. Nathan,* San Francisco, for Amicus Curiae.

## OPINION

By the Court, SPRINGER, J.:

These consolidated appeals[1] arise out of two judicial review proceedings wherein the district court set aside administrative decisions made by the Public Service Commission (PSC). The principal and dispositive issue in both of these appeals is whether or not proper and jurisdictional notice was given of the administrative proceedings. The district court held that notice was not sufficient in either case and that, therefore, all administrative orders in these two matters are void. We agree and affirm the judgment of the district court.

### Notice

The problem with notice in these cases is that the PSC attempted to effect a rate redesign for Southwest Gas Corporation (hereafter "Southwest") and for Sierra Pacific Power Company (hereafter "Sierra") without ever giving public notice of its intention to do so.

The two subject administrative proceedings were initiated by the utilities as rate increase applications. Rate design proceedings, however, were initiated by the PSC. Rate design changes are substantially different from changes in rate. Rate design refers to the form of rate structure wherein different unit rates are charged to different classes of customers based upon the cost of service to the class. In the mentioned rate increase application proceedings the PSC moved to change the utilities' rate

---

[1]The court has determined that consolidation of these appeals will assist in their disposition. NRAP 3(b).

design by eliminating "block rate pricing." This was to be accomplished by gradually "flattening" the rate schedule, that is to say, by decreasing the unit rate charged to low volume users and increasing the unit rate charged to high volume customers. Ultimately, it was the intention of the PSC to eliminate block rates entirely and require a single unit rate for all customers, large or small.

This court, in Nevada Power Co. v. Public Serv. Comm'n, 91 Nev. 816, 544 P.2d 428 (1975), determined "that in the State of Nevada the public, who is served by the utility, has a statutory right to both notice of a utility's rate increase application, including its contents, and notice of a Commission hearing on any such rate application." *Id.* at 820. Inherent in any notice and hearing requirement are the propositions that the notice will accurately reflect the subject matter to be addressed and that the hearing will allow full consideration of it. In *Nevada Power,* above, this court, citing the U.S. Supreme Court in Gonzales v. United States, 348 U.S. 407 (1955), and cases cited therein, stated: "A hearing is not meaningful without an awareness of the matters to be considered." 91 Nev. at 824.

The subject matter of the PSC action, change in rate design, does not appear in the notices given in these cases. Consequently, all matters relating to rate design were improperly heard and decided.

The PSC contends that general notice was afforded by the following language contained in the notices: "All rate schedules, special charges, service contract rules and regulations pertaining to Applicant's operation are subject to review in this proceeding." Such general language clearly could not and did not give the utilities an opportunity to oppose the proposed change in the rate design. As a result they understandably did not prepare evidence relating to rate design. The general notice is clearly inadequate for this purpose.

It is not enough that some users may have been extremely perceptive and presented testimony which the PSC could then use as a basis for an order. The notice must be specific enough to alert all interested persons of the substance of the hearing. *See* Wagner Electric Corporation v. Volpe, 466 F.2d 1013, 1019-20 (3rd Cir. 1972).

In the *Nevada Power* case, this court quoted from the PSC's order in which the PSC made the following declaration:

[A] person examining these applications should be able to rely on the factors stated by the Applicant in its applications . . . . Therefore, were the Commission to hear and issue orders on matters not submitted by the Applicant in its application, there would to that extent be a denial of fairness and due process through inadequate Notice.

91 Nev. at 819.

The PSC recognizes that it should not hear matters and issue orders on matters not submitted by the applicant nor provided for with some degree of specificity in the notice. Such would be and is a "denial of fairness and due process through inadequate Notice."

*Appeal No. 12047; April, 1976 Rehearing*

On February 18, 1976, a "Notice of Rehearing" was issued in the case of PSC Docket No. 241 (Appeal No. 12047). The notice specified and was limited to the "issue of rate design." The PSC argues that any defect in the original notice was cured by the notice of rehearing.

Whether the notice of rehearing in fact cured any defects in the original notice turns on whether the PSC action in affecting a rate design order constituted the adoption of a general regulation such as defined in NRS 233B.038.[2]

The trial court concluded that in instituting changes in rate design the PSC was in effect promulgating a regulation which was of such general consequence and impact as to be governed by the rule-making requirement of the Administrative Procedure Act. The court further concluded that since the PSC did not follow the requirements specified in the provisions of NRS Chapter 233B in adopting such an amendment, it engaged in an unlawful procedure which should be declared null and void. We agree.

---

[2]NRS 233B.038 provides as follows:

233B.038 "Regulation" defined. "Regulation" means an agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes a proposed regulation and the amendment or repeal of a prior regulation, but does not include:

1. A statement concerning only the internal management of an agency and not affecting private rights or procedures available to the public;

2. A declaratory ruling;

3. An intraagency memorandum;

4. An agency decision or finding in a contested case; or

5. A regulation concerning the use of public roads or facilities which is indicated to the public by means of signs and signals.

A regulation is a rule, standard, directive or any statement of general applicability which effectuates or interprets policy of the agency concerned. NRS 233B.038. Although the order changing Southwest's rate design is directed to Southwest only, it certainly has a "general applicability" which affects other gas utilities and their customers. Also, the decision to "flatten" Sierra's rates appears from the record to be part of a general policy to move to full volumetric pricing for all utilities. The order is of such major policy concern and of such significance to all utilities and consumers that it cannot be characterized as a simple adjudication in a contested case and thus outside of the statutory definition of a regulation. *See* NRS 233B.038(1).

The order is prospective and general in nature; and the intent to adopt this new rate design should properly be done by the rule making process rather than by a purely judicial method of evolving rules on a case by case basis.

The trial judge saw this point and expressed it thus:

> If an administrative agency needs to adopt a regulation which comes within the definition of that term as found in the Administrative Procedure Act, then it is, in my opinion, essential that the agency proceed in accordance with the provisions of the Act. This is required, in my opinion, because of the great scope of authority vested in administrative agencies, the broad discretion allowed to them in the exercise of that authority, because of the impact of their actions on the vital interest of all citizens of this state, including the business entities and other persons who come before that agency, and because of the deference accorded their determinations by the courts on judicial review. . . .
>
> If the procedures of 233B are followed there will be adequate notice given to all persons who will be immediately or may be in the future affected by the proposed regulation. They will be afforded an opportunity to appear at hearings and to offer evidence and argument in support of or in opposition to the proposed regulation. The agency and its staff will have the benefit of various opposing views on the subject, and who knows, in the process the agency might even change its position and modify or even withdraw a proposed regulation. . . .

If the PSC order in this case constituted a regulation, as we hold it does, then it is not valid unless the notice provisions of NRS 233B.060 were complied with. They were not. We agree with the trial court that the order following the April, 1976 rehearing is also void and of no effect.

.

## Effect of a Void Order: Propriety of Refunds

Given the invalidity of the PSC order for the reasons stated, there is still a question concerning the effect of the order between the time it was entered and the time it was vacated by judgment of the district court. We hold that because of improper notice the PSC order was void and was of no effect at any time; consequently the granting of refunds for payments made under the void order was proper.

The PSC is a creature of the legislature; rate making is a legislative process. "The power to prescribe rates for a common carrier or a public utility company is a legislative function as distinguished from judicial power . . . which the legislature has really exercised in the first instance by prescribing that all rates shall be just and reasonable." Garson v. Steamboat Canal Co., 43 Nev. 298, 312, 185 P. 801, 805 (1919).

The legislature has decreed that "[a]ll rates . . . [prescribed by the PSC] shall be prima facie lawful, from the date of the order until changed or modified by the commission, or in pursuance of NRS 704.540 to 704.580, inclusive."[3] NRS 704.130(1). This court has held that the PSC may establish procedures "as may be required to carry into effect the legislative intention expressed in the [NRS] . . . so long as such procedures comply with the requirements of due notice and hearing on such factual issues. . . ." Southwest Gas Corp. v. Public Serv. Comm'n, 92 Nev. 48, 61, 546 P.2d 219, 227 (1976).

The statutory presumption of validity of the agency's order assumes that the order was promulgated in accordance with law and in abidance with "the requirements of due notice and hearing." The legislature and this court have insisted that procedural safeguards be observed. For example, NRS 233B.060(6) requires: "No regulation adopted after July 1, 1965, is valid unless adopted in substantial compliance with this chapter but no objection to any regulation on the ground of noncompliance with the procedural requirements of this section may be made more than 2 years after its effective date."[4]

This court has held as invalid PSC orders adopted without compliance with the procedural safeguards of the Administrative Procedure Act. In Checker, Inc. v. Public Serv. Comm'n, 84 Nev. 623, 446 P.2d 981 (1968), this court invalidated a commission order because the order had been issued ex

---

[3]NRS 704.540 to 704.580 provides for judicial review of commission orders. NRS 704.550(1) provides in part, however, "[i]n any event all rates, charges and regulations of the commission shall be deemed reasonable and just until set aside by the court . . . ."

[4]Prior to 1977 this section was section 5 of NRS 233B.060.

parte and without notice and hearing. The court ruled that "[t]he Commission cannot act without notice and a reasonable opportunity to be heard and must act within constitutional limits." 84 Nev. at 634. The court found the Commission to be without jurisdiction because it had not complied with the notice and hearing requirements imposed by the legislature.

In Gibbens Co. v. Archie, 92 Nev. 234, 548 P.2d 1366 (1976), the court held an agency regulation invalid and therefore without force as to those parties who had entered a timely objection to a regulation promulgated in violation of the Administrative Procedure Act. The court held:

> By enacting the Nevada Administrative Procedure Act, it is clear our legislature intended to establish minimum procedural requirements governing the regulation-making process of state agencies. NRS 233B.020. Those procedural requirements mandate that, *prior* to the adoption, amendment, or repeal of any regulation, an agency first must give at least thirty days' notice of its intended action and the time, place, and manner in which interested persons may present their views. NRS 233B.060(1) and (2). Further, the agency must afford interested persons an opportunity to submit, orally or in writing, data, views or arguments. NRS 233B.060(3). Where required, such minimum procedural requirements may not be ignored.

92 Nev. at 235 (emphasis added).

As recently as 1981, in State Bd. Equal. v. Sierra Pac. Power, 97 Nev. 461, 634 P.2d 461 (1981), this court affirmed the policy whereby a state agency's failure to follow the Administrative Procedure Act will invalidate any regulation issued in violation of the notice and hearing requirements. The court stated that the "Commission is free to amend its regulations; it need only follow the provisions of NRS 233B.060 which are meant 'to establish minimum procedural requirements governing the regulation-making process of state agencies.' Gibbens Co. v. Archie, *supra,* 235." 97 Nev. at 465.

The remaining question is whether the trial court acted properly, in administrative review, when it ordered refunds for monies paid under the void orders.

The limitations and duties of the courts to review PSC decisions are delineated in NRS 233B.140(5) of the Administrative Procedure Act:

> 5. The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or

remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

    (a) In violation of constitutional or statutory provisions;

    (b) In excess of the statutory authority of the agency;

    (c) Made upon unlawful procedure;

    (d) Affected by other error of law;

. . . .

In *State Bd. Equal.,* above, this court sustained a district court order which required the refund of certain monies collected pursuant to a regulation later determined to be invalid. As said before, the presumption of validity attaches only to lawfully promulgated orders. Courts in other jurisdictions, after invalidating a commission decision, regulation, or order, have issued commands requiring refunds or surcharges. *See* Application of Hawaii Elec. Light Co., 594 P.2d 612, 627 (Hawaii 1979) ("In the interim pending the outcome of the Commission's further consideration of the reasonableness of the residential rate structure, the [previously approved] structure is to be maintained."); California Mfrs. Ass'n v. P.U.C., 595 P.2d 98, 103 (Cal. 1979) ("[T]he commission shall order refunds and surcharges, if appropriate . . .").

The Texas Court of Civil Appeals, dealing with a problem similar to the one before us, held that an order directing refunds or surcharges was within a court's or a commission's power and stated:

In the context of the present case,[5] no person can have a vested right in any rate other than the last legal or official rate promulgated by the Commission . . . . In the present case, the Commission directed that such new rates be implemented effective February 28, 1981. If these new official or legal rates are finally adjudged valid, the judgment pronouncing their validity relates back to February 28, 1981, and they are valid *ab initio.* No one ever had a right thereafter to charge or pay for the utility's services according to any other system of rates. *If these new official or legal rates are finally adjudged invalid, they were never effective at all to vest a right in anyone . . . .*

[5]Appeal from judgment denying temporary injunction of final order of the Public Utility Commission requiring that company commence charging for its services so as to produce specified increase in annual revenue and requiring company to refund monies previously collected under system of charges producing higher increase.

Southwestern Bell Tel. Co. v. Public Util. Comm'n, 615 S.W.2d 947, 957 (Tex.Civ.App. 1981), *aff'd,* 622 S.W.2d 82 (Tex. 1981) (emphasis added).

Under the Nevada statutes and authorities cited above the district court was within its authority when it ordered that certain refunds and surcharges be made upon invalidation of the PSC's rate design order.

### *Waiver: Retroactive Rate Making*

We have held that the order in question is void and unenforceable. Appellants claim, however, that the large industrial consumers, notably Sierra, by failing to move for a stay pursuant to NRS 704.550[6] waived their right to receive refunds. They cite Garson v. Steamboat Canal, 43 Nev. 298, 185 P. 801 (1919), in support of their contention that the courts are constitutionally precluded from ordering refunds on review. Our reading of the case reveals no support for such contention. Moreover, NRS 704.550 does not make application for injunction a condition for return to the status quo prior to the issuance of a void order.

The Colorado Supreme Court has held that a petition for stay, coupled with a suspending bond, is not a condition precedent to seeking reimbursement. Mountain States Tel. & Tel. Co. v. Public Util. Comm'n, 502 P.2d 945 (Colo. 1972). In that case, however, it was a citizens group, not the utility, which had sought the review in district court. On the other hand, it was the utility that was forced to make the refund because of an invalid rate order. There is broad language in the case stating that obtaining a stay was unnecessary.

---

[6]NRS 704.550 in pertinent part provides as follows:

704.550 Injunction to suspend, stay commission order: Time for application; suspension of schedule of rates; bond of public utility to keep suspended rates in effect and secure refunds, overpayments; refund procedure.

. . . .

2. If an injunction is granted by the court and the order complained of is one which permanently suspends a schedule of rates and charges or a part thereof filed by any public utility pursuant to NRS 704.070 to 704.110, inclusive, or which otherwise prevents such schedule or part thereof from taking effect, the public utility complaining may keep in effect or cause to be put into effect, as the case may be, the suspended schedule or part thereof pending final determination by the court having jurisdiction, by filing a bond with the court in such amount as the court may fix, conditioned upon the refund to persons, firms, companies or corporations entitled thereto of the amount of the excess if the rate or rates so suspended are finally determined by the court to be excessive.

In City of Los Angeles v. Public Util. Comm'n, 497 P.2d 785 (Cal. 1972), the California Public Utilities Service Commission granted Pacific Telephone and Telegraph Company a substantial rate increase. The order was challenged in a judicial review, and it was concluded that pending determination of the claim the increased revenues would be collected by the company pursuant to a partial stay order and would be subject to refund. The Supreme Court of California held, upon a determination that the ordered rate increase was invalid, that the money collected pursuant to the stay should be refunded. *Id.* at 803.

Hawaii has also assumed the validity of surcharges and refunds derived from reallocation of rate spreads following the annulment of a commission order. *See* Application of Hawaii Elec. Light Co., above.

We hold that failure to apply for injunction to enjoin enforcement of a void order does not *per se* avoid a refund of monies improperly paid as a result of the void order.

Appellants claim that refunds are improper because they constitute improper retroactive rate making. We disagree. The refund order of the district court is not a form of retrospective legislation; it is merely a recognition that charges cannot be validly grounded on a void order.

The judgment of the district court in both appeals is affirmed in all respects.

MANOUKIAN, C. J., and MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.