RONALD T. COURY, DBA PRESIDENTIAL LIMOUSINE SERVICE AND PUBLIC SERVICE COMMISSION OF NEVADA, APPELLANTS, v. WHITTLESEA-BELL LUXURY LIMOUSINE, A NEVADA CORPORATION, DBA WHITTLESEA VIP LIMOUSINE SERVICE; SILVER STATE LIMOUSINE, AND LAS VEGAS MINI BUS, WHITTLESEA BLUE CAB COMPANY, A NEVADA CORPORATION; AND S & F ENTERPRISES, INC., A NEVADA CORPORATION, DBA LUCKY 7 LIMOUSINE SERVICE, RESPONDENTS.

No. 16512

June 26, 1986                                    721 P.2d 375

---

*Lionel, Sawyer & Collins, David C. Whittemore, Carol R. Davis,* Las Vegas, for Appellant Coury.

*William H. Kockenmeister,* Carson City, for Appellant Public Service Commission.

*Norman Ty Hilbrecht,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

In dispute here is the validity of a certificate of public convenience and necessity issued by the Public Service Commission to appellant Ronald T. Coury, doing business as Presidential Limousine Service.

In the administrative proceeding before the commission Whittlesea-Bell and the other respondents in this appeal intervened, objecting to the issuance of the certificate to Coury. After issuance of the certificate intervenors petitioned for judicial review. The district court declared the certificate void; whereupon, Coury and the commission filed this appeal. The district judge's order is affirmed.

The commission's order granted a certificate authorizing a limousine service for "stretch vehicles only." The certificate restricted the limousine service so that the stretch limousines may not "approach the McCarran airport unless it has been prearranged by the customer."

Coury's application before the commission requested permission to establish service for "operation of an on call limousine

service over irregular routes." Exhibit 1 to the application indicates that the applicant was seeking authority "to operate one (1) limousine on an on call over regular routes basis." Under the heading "Geographical Area," the applicant stated that the proposed service was to be a "luxury service using a 'stretch' limousine with a relatively high hourly charge" and that, therefore, the appellant did not "anticipate direct transportation" to and from the airport.

Exhibit 1-E to the application indicates that the applicant was proposing a "luxury 'stretch' limousine service based on a relatively high hourly rate directed towards the occasional user of a limousine as a luxury expenditure." The exhibit further represents that only six of some 100 certified limousines were of the so-called "stretch" variety.

In sum, the words of application seek an unrestricted limousine service with an indication of intention appearing in one of the exhibits that a special kind of "stretch" limousine was what was really contemplated.

The notice of application issued by the commission gave notice that application was made for authority to operate "a limousine service, on call, over irregular routes, with [sic] Clark County, Nevada."

Respondents petitioned to intervene and protested the application. No mention was made in the protest of any qualification, "stretch" or otherwise, on the nature of Coury's application for authority to operate a limousine service in Clark County.

Reference was frequently made throughout the commission hearing to what Coury had termed "stretch" limousines, but the application itself was never amended to ask for certification of this breed of limousine, and the distinction between "stretch" and "formal" limousines was not covered in the final briefing of the parties.

In the briefing before the commission the applicant did not seek authorization to operate a stretch limousine as such nor was any opposition to such limited service expressed by the protestors.

### Rule-Making

The district court decided that the commission in officially defining a vehicular entity as a "stretch limousine" and in issuing a certificate of public convenience and necessity exclusively for operations of this kind of vehicle was engaging "in ad hoc rule making in violation of NRS 233B. . . ."[1]

---

[1] The commission in a footnote to its opinion supporting issuance of the "stretch" certificate defined "stretch limousine" as follows:

A "stretch" limousine is a prestigious limousine which is modified in length from four (4) to six (6) feet, or more, in order to provide

NRS 233B.038 describes a "regulation" in terms of being a "standard" of "general applicability" which "effectuates policy." By defining stretch limousines the commission appears to have been setting a standard of general applicability.

To define means to "determine the limits of," to "state exactly what (a thing) is." (The Oxford Dictionary of English Etymology.) By determining the limits of what a stretch limousine is (a "prestigious" limousine which is four to six feet longer and which contains certain "luxury amenities") the commission was properly seen by the district court as setting a standard of general applicability which effectuates commission policy.

Definition of a stretch limousine is a new definition. A "limousine" (the type of service applied for) is already defined as a "motor vehicle excluding taxicabs of a passenger capacity of seven or less, including the driver, engaged in general transportation of persons 'for hire' not on a regular schedule or over regular routes." At the time these proceedings commenced at the commission level there was no such thing as a "stretch limousine" or a "luxury limousine" or a "prestige limousine" known to the scheme of public utility regulation in this state. It now would appear that, by commission fiat, there will henceforth be two kinds of limousines in the world, an ordinary or *"formal limousine"* and an extraordinary or *"stretch limousine,"* which is larger and rents for more money and contains certain luxury amenities presumably not contained in the formal limousine.

An agency makes a rule when it does nothing more than state its official position on how it interprets a requirement already provided for and how it proposes to administer its statutory function. K-Mart Corp. v. State Indus. Ins. Sys., 101 Nev. 12, 693 P.2d 562 (1985). The district judge cannot be faulted for concluding that the commission had set, "ad hoc," (*i.e.,* without the formal requisites for promulgation of regulations provided for in NRS 233B) a new standard for limousines, namely, a "stretch" limousine. It is difficult, on this record, to claim that this new standard was not of general applicability, or does not set policy for the future.

Coury argues that granting him a "stretch" certificate was merely placing a limit or condition on the certificate as authorized by NRS 706.391(4) and (5). The commission's granting of authority to operate a special kind of limousine, a "stretch" as

additional space for passengers without the need for a bench or fold-up seat, in contrast to the more common "formal" limousine. A vehicle of this type contains such luxury amenities as: a television, radio, tape player, privacy partions [sic], moonroof, bar set-up, ice compartment and other like features.

distinguished from a "formal" limousine is far more than a mere limitation on the operation of limousines, it is a specific grant of authority to operate a special, previously undefined *kind* of limousine. This is different from a mere limit or condition. A good example of a limitation or condition would be the restriction denying approach to the McCarran airport. This is the type of limitation or condition which properly can be imposed on a certificate under the statute and cases cited by Coury.

The commission argues that its new definition of this distinct kind of limousine is merely part of a decision in a contested matter and is of no prospective or general applicability.

We stated in Public Service Comm'n v. Southwest Gas Corp., 99 Nev. 268, 662 P.2d 624 (1983):

> A regulation is a rule, standard, directive or any statement of general applicability which effectuates or interprets policy of the agency concerned. NRS 233B.038. Although the order changing Southwest's rate design is directed to Southwest only, it certainly has a "general applicability" which affects other gas utilities and their customers. Also, the decision to "flatten" Sierra's rates appears from the record to be part of a general policy to move to full volumetric pricing for all utilities. The order is of such major policy concern and of such significance to all utilities and consumers that it cannot be characterized as a simple adjudication in a contested case and thus outside of the statutory definition of a regulation. *See* NRS 233B.038(1).

99 Nev. at 273; 662 P.2d at 627.

Certainly, if the commission ultimately defines a new kind of vehicle and recognizes the possibility of allowing "new stretch limousine service," others in addition to Coury may be interested in sharing this new market.

Taking language from the *Southwest Gas* case, such an order would be of such major policy concern and of such significance to all limousine operators, present or future, that it could not be characterized as a simple adjudication in a contested case and thus outside of the statutory definition of a regulation. We therefore hold that the district court did not err in setting aside the certificate to operate a stretch limousine on the ground that the commission's defining and certifying such a vehicle constituted "ad hoc" rulemaking contrary to the administrative procedure act.

### Notice

It also appears that the district court was correct in ruling that

the order of the commission should be invalidated because of improper notice having been given to the public and the intervenors, respondents herein.

Notice in this case is wanting in almost every respect. For some inexplicable reason the commission failed almost entirely to comply with the requirements of NRS 233B.121.[2] The notice provides no short and plain statement of the matters asserted, no statement of the nature of the hearing, no statement of legal authority under which the hearing was to be held, no statement of the issues and no reference to particular sections of statutes and regulations involved. The district court did not err in invalidating the non-conforming notice given in this case.

It is true that we have held in Nevada State Apprenticeship Council v. Joint Apprenticeship and Training Committee for the Electrical Industry, 94 Nev. 763, 587 P.2d 1350 (1978), that

---

[2]NRS 233B.121 provides:

    233B.121   Notice of hearing in contested case; contents of record.

    1.   In a contested case, all parties must be afforded an opportunity for hearing after reasonable notice.

    2.   The notice must include:

    (a) A statement of the time, place and nature of the hearing.

    (b) A statement of the legal authority and jurisdiction under which the hearing is to be held.

    (c) A reference to the particular sections of the statutes and regulations involved.

    (d) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement must be furnished.

    3.   Any party is entitled to be represented by counsel.

    4.   Opportunity must be afforded all parties to respond and present evidence and argument on all issues involved. An agency may by regulation authorize the payment of fees and reimbursement for mileage to witnesses in the same amounts and under the same conditions as for witnesses in the courts of this state.

    5.   Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order or default. If an informal disposition is made, the parties may waive the requirement for findings of fact and conclusions of law.

    6.   The record in a contested case must include:

    (a) All pleadings, motions and intermediate rulings.

    (b) Evidence received or considered.

    (c) A statement of matters officially noticed.

    (d) Questions and offers of proof and objections, and rulings thereon.

    (e) Proposed findings and exceptions.

    (f) Any decision, opinion or report by the hearing officer presiding at the hearing.

    7.   Oral proceedings, or any part thereof, must be transcribed on request of any party.

    8.   Findings of fact must be based exclusively on substantial evidence and on matters officially noticed.

where parties are sufficiently apprised of the nature of the proceedings so that there is no unfair surprise, facially improper notice may in some cases be upheld. The crucial question in making a determination in these kinds of cases is whether there has been an adequate opportunity to prepare.

In the case before us the notice is so completely defective as to justify the district court's finding of invalidity on this ground alone. It cannot be fairly said that any of the intervenors had an adequate opportunity to oppose an application, conceived after the hearing commenced, to operate a service for freshly defined stretch limousines to be employed in the development of an entirely "new market."

We need not consider appellants' other assignments of error as the district court was clearly correct in setting aside the commission order. The district court's judgment is affirmed.