THE STATE OF NEVADA, DEPARTMENT OF INSUR-ANCE, AND TERESA FRONCEK RANKIN, IN HER CAPACITY AS INSURANCE COMMISSIONER OF THE STATE OF NEVADA, APPELLANTS, *v.* HUMANA HEALTH INSURANCE OF NEVADA, INC., A NEVADA CORPORA-TION, RESPONDENT.

No. 25391

April 12, 1996          914 P.2d 627

*Frankie Sue Del Papa,* Attorney General, and *James C. Smith,* Deputy Attorney General, Carson City, for Appellants.

*Lionel Sawyer & Collins* and *Paul Larsen* and *David N. Frederick,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Humana Health Insurance of Nevada, Inc. (Humana-Nevada) filed tax returns for the 1988, 1989, and 1990 tax years. The returns claimed the home office tax credit allowed to insurers under NRS 680B.050. After disallowing as untimely Humana-Nevada's 1988 request for the credit, the Department of Insurance (DOI) commenced an examination of insurers claiming the home office tax credit, including Humana-Nevada. The DOI determined Humana-Nevada did not function as a home office and ordered Humana-Nevada to pay the delinquent amount of taxes it had claimed in the credit for the 1989 and 1990 tax years. The DOI appeals officer affirmed this decision. On appeal to the district court, the appeals officer was reversed. The district court concluded the DOI had acted improperly in developing home office determination criteria for the 1991 examination of Humana-Nevada. The DOI appealed. We now decide the district court's conclusion regarding the DOI's home office criteria was erroneous and reverse its order.

### FACTS

The action in the instant case stems from a tax dispute between the DOI and Humana-Nevada over Humana-Nevada's claim for the home office tax credit for the 1988, 1989, and 1990 tax years. The home office tax credit is found in NRS 680B.050. Humana-Nevada is a licensed domestic health insurer conducting business as a preferred provider group organization for Nevada. Humana-Nevada's only office is located in Las Vegas, Nevada. However, Humana-Nevada is a member of a large group of medical care and hospital business operations. The ultimate parent of this group of medical benefits providers is Humana, Inc., which is based in Louisville, Kentucky.

By establishing a home office in Nevada, an insurer is entitled to a substantial credit against its taxes. NRS 680B.050(4) pro-

vides that an insurer is not entitled to the home office tax credit unless "[t]he insurer owned the property upon which the reduction is based for the entire year for which the reduction is claimed" and "[t]he insurer occupied at least 70 percent of the usable space in the building to transact insurance . . . ." NRS 680B.050 provides no other criteria for home office determination. These are also the only requirements listed on the DOI's tax form provided to insurers for use in claiming the home office tax credit.

Humana-Nevada did not initially claim the home office tax credit on its return for the 1988 tax year. However, within the time allowed by NRS 680B.050(3), Humana-Nevada filed an amended return, including calculation of the home office tax credit. On December 15, 1989, the DOI commissioner wrote Humana-Nevada denying its request on the ground that Humana-Nevada had not met the deadline for amended returns required by NRS 680B.050(3) and concluding that no statutory provision existed which allowed for the filing of an amended return after the statutory date. After requesting the credit for a second time and receiving a second denial, Humana-Nevada sought a hearing on the denial. DOI refused Humana-Nevada's request for a hearing in a written decision designated Cause No. 90.109. Humana-Nevada next sought judicial review of the DOI's decision. On May 8, 1991, the district court remanded the matter to the DOI for a hearing or findings on Humana-Nevada's request.

In 1991, the DOI commissioner ordered an examination of insurance companies that claimed the home office tax credit in NRS 680B.050. The DOI looked to the industry standard for home office criteria. A home office is generally understood in the industry as the place where an insurance company maintains its chief executive and general supervisory departments. Therefore the criteria the DOI used in determining whether or not the insurer had properly claimed the home office exemption included whether it performed functions consisting of underwriting, premium accounting, payroll, and actuarial and administrative functions in its Las Vegas office. These criteria were circulated within the DOI and used as questions in the DOI's investigation of insurance companies claiming this credit.

Humana-Nevada's review was completed on July 1, 1991. The review indicated that Humana-Nevada had owned the building for the entire year the reduction was claimed. However, the report indicated that the only functions performed at the Las Vegas office were marketing and support services to health care providers, plan members, and group policyholders. Remaining corporate functions were performed outside of the Las Vegas office. The report also noted that the top level employee in the Las Vegas

office, the executive director, reported directly to and was subordinate to one of the corporate vice presidents in Louisville, Kentucky.

Humana-Nevada's office in Las Vegas also served as an office for two of Humana's subsidiaries licensed to do business in the State of Nevada. Humana-Nevada's office listed twenty-nine employees. However, payroll checks were issued by Humana, Inc. and drawn on a bank account in Kentucky which was not owned by Humana-Nevada. Job description sheets and vacancy announcements found in Humana-Nevada's files were labeled "Humana Health Care Plans." Payroll was issued through Louisville as part of a management service agreement with Group Health Insurance, Inc., a wholly owned subsidiary of Humana, Inc. The services to be performed by Group Health Insurance were marketing, internal auditing, budgeting and business planning, systems and development, regulatory agency filings, medical claims processing, payment of payroll, and allocation of consolidated federal income tax.

The DOI report concluded that the operations of Humana-Nevada were much more like that of a branch office of Humana than of a home office, as that term is generally understood in the industry. The DOI concluded that the Kentucky office was the seat of power and the place where the direction of Humana-Nevada's operation was controlled and monitored.

After completing the examination in 1991, the DOI filed a complaint against Humana-Nevada, retroactively challenging its entitlement to the home office tax credit for the 1989 and 1990 tax years. The DOI's challenge to Humana-Nevada's home office tax credit on its 1989 and 1990 returns was designated Cause No. 91.074. The DOI commissioner ordered Cause No. 90.109, the challenge of the denial for the 1988 tax return, to be consolidated with Cause No. 91.074. The DOI commissioner appointed an appeals officer to hear the case.

The appeals officer found for the DOI, ordering Humana-Nevada to pay the deficiency assessment for the home office tax credit improperly taken for the 1988, 1989, and 1990 tax years. Additionally, the appeals officer denied Humana-Nevada's request for a refund of the home office tax credit for the 1988 tax year. The appeals officer relied on evidence that the insurance industry considers a home office to be the office where key executives and key records of an insurer are located and where major functions of the business, such as rate making, underwriting, and investment decisions, are performed. The appeals officer concluded that the evidence indicated that for Humana-Nevada, most of these functions were carried out in Louisville, Kentucky, not Las Vegas. Humana-Nevada then sought judicial review of

the appeals officer's decision, and the district court reversed this decision.

## DISCUSSION

Generally, NRS 233B.135 prohibits appellate courts from substituting their judgment for that of agencies as to the weight of evidence on a question of fact. *See* Nevada Indus. Comm'n v. Hildebrand, 100 Nev. 47, 52, 675 P.2d 401, 404 (1984). However, this case involves statutory construction of NRS 680B.050. Therefore, "this court may 'undertake independent review of the administrative construction of a statute.' " SIIS v. Campbell, 109 Nev. 997, 999, 862 P.2d 1184, 1185 (1993) (quoting American Int'l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983)).

In regard to statutory interpretation, this court has stated:

"The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained will prevail over the literal sense. The meaning of words used in a statute may be sought by examining the context and by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The entire subject matter and the policy of the law may also be involved to aid in its interpretation, and it should always be construed so as to avoid absurd results."

Moody v. Manny's Auto Repair, 110 Nev. 320, 325, 871 P.2d 935, 938 (1994) (quoting Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 637-38, 503 P.2d 457, 458-59 (1972)). Additionally, words in a statute "should be given their plain meaning unless this violates the spirit of the act." McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 440 (1986).

NRS 680B.050(1) states that a domestic or foreign insurer which owns and substantially occupies and uses any building in the state as its home office or as a regional home office is entitled to certain credits against the general tax on premiums levied on insurers transacting business in Nevada. NRS 680B.050(4) states that an insurer is not entitled to the credits unless (1) the insurer owned the property for the entire taxable year, and (2) occupied at least seventy percent of the usable space of the property to conduct insurance transactions. Uncontested evidence established that Humana-Nevada met both these requirements. Humana-

Nevada argues that any other criteria the DOI used in determining whether or not to grant Humana-Nevada the home office tax credit were improper.

Humana-Nevada argues the DOI denied the home office tax credit based on factors listed in an ad hoc regulation, i.e., the questions circulated within the DOI to be used in the investigations.[1] NRS 233B.038 defines a regulation as "an agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure or practice requirements of any agency."

Humana-Nevada relies on Coury v. Whittlesea-Bell, 102 Nev. 302, 721 P.2d 375 (1986), to argue that the DOI's criteria was an ad hoc regulation. In *Coury,* this court stated that defining stretch limousine for the purpose of granting or denying licenses to operate at the airport was tantamount to setting a standard of general applicability. However, in *Coury,* the commission was creating a definition for a new subclass of limousines, stretch limousines. Limousines were mentioned in the statute and already had an established dictionary definition, and the Legislature had not mentioned this subclass of limousines in the statute. *Id.* at 305, 721 P.2d at 377.

We conclude that *Coury* does not control in this instance. The term home office was put in the statute by the Legislature, and two minimum requirements had to be met before being eligible for the tax credit. The Legislature did not attempt to define the term "home office" further, but there is no indication that it was attempting to give a complete exhaustive definition to the term. The definition of the term home office was well known both within the insurance industry and to legislators. Testimony by the DOI's staff indicated that the parameters of the term are well known.

The DOI presented testimony that home office had a specific well known definition in the insurance industry: the place where

---

[1]In 1985, the Legislature amended NRS 680B.050. The prior incarnation of the statute included additional requirements that would indicate an insurer's office was actually a *regional* home office. These included the following functions related to the insurance business: actuarial, medical (where required), law, approval or rejection of applications for insurance and issuance of policies thereon, approval of payment of claims, maintenance of records to provide policyholder information and service, advertising, publications, public relations, and supervision and training of sales and service personnel. 1985 Nev. Stat., ch. 380, § 6 at 1063-64. However, the 1985 amendment of this statute repealed these requirements. The questions set out in the DOI interoffice memorandum to establish home office criteria include, among others, the criteria deleted by the Legislature in 1985. However, a review of the legislative history behind these changes reveals nothing to us that indicates that these criteria should not be used in determining the home office status of an insurer.

an insurance company maintains its chief executive and general supervisory departments and the principal office of an insurer in the jurisdiction in which it is domiciled, from which its operations are directed. Therefore, in line with normal procedure, we must assume that the Legislature left the definition to be provided by the agency. The only direction was that the criteria listed in the statute would be used in the determination. However, we conclude, and common sense dictates, that the statutory requirements are not the only requirements for determining if an insurer can claim the home office credit and that the plain meaning of the term could be derived by the Department from industry usage. State ex rel. Tax Comm'n v. Saveway, 99 Nev. 626, 630, 668 P.2d 291, 291 (1983) (great deference will be afforded to an administrative body's interpretation when it is within the statutory language).

We conclude that in disallowing the credit based on internally formulated criteria, the DOI was merely construing a statute and this construction was correctly applied to the facts of this case.

The DOI denied Humana-Nevada its home office tax credit for the 1988 tax year after it filed an amended return. NRS 680B.120(1) provides the following, in pertinent part: "Any person from whom fees, charges or taxes imposed by this code have been erroneously collected may apply for refund at any time within 1 year after the date such fees, charges or taxes were originally required to be paid." However, Humana-Nevada was not entitled to a refund on its tax payment for 1988 because the tax was not "erroneously collected" as required by NRS 680B.120, because the 1991 examination indicated that Humana-Nevada did not use its office as a home office.

## CONCLUSION

We conclude that the DOI's definition of a home office was merely a statutory interpretation and not an ad hoc regulation. Therefore, we conclude that the appeals officer properly construed the term home office. Based on this construction, the appeals officer did not err in finding that Humana-Nevada should be required to pay the deficiency for the 1989 and 1990 tax years and that Humana-Nevada was not entitled to a refund for the 1988 tax year. Accordingly, we reverse the order of the district court.

STEFFEN, C. J., SPRINGER, SHEARING, and ROSE, JJ., and ZENOFF, Sr. J., concur.[2]

---

[2]THE HONORABLE DAVID ZENOFF, Senior Justice, was appointed to sit in place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const. art. 6, § 19; SCR 10.