STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY, APPELLANTS AND CROSS-RESPONDENTS, v. COMMISSIONER OF INSURANCE OF THE STATE OF NEVADA, DIVISION OF INSURANCE OF THE STATE OF NEVADA, RESPONDENT AND CROSS-APPELLANT.

No. 28359

May 19, 1998                                    958 P.2d 733

---

[11]The HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.

*Pearson, Patton, Shea, Foley & Kurtz, P.C.,* Las Vegas, for Appellants/Cross-Respondents.

*Frankie Sue Del Papa,* Attorney General, and *Edward T. Reed,* Deputy Attorney General, Carson City, for Respondent/Cross-Appellant.

# OPINION

*Per Curiam:*

State Farm Mutual Automobile Insurance Company and State

Farm Fire and Casualty Company ("State Farm") appeal from a district court order affirming a determination of the Commissioner of Insurance relative to State Farm's calculation of liability insurance premiums. We are asked to determine whether, in the absence of regulatory action, State Farm's interpretation of the "at-fault" rules set forth in NRS 687B.385 was reasonable. We conclude that it was and, accordingly, we reverse the decision of the district court.

## STATEMENT OF FACTS

In 1987, the Nevada legislature enacted NRS 687B.385, which prohibits cancellation, non-renewal or increase in insurance premiums due to claims for which the insured was not "at fault." From the time that NRS 687B.385 was enacted, State Farm interpreted the "at fault" language in the statute as referring to accidents in which its insureds were fifty percent or more at fault. Thus, State Farm developed a rule, known as the "chargeable accident rule," whereby it could impose a surcharge pursuant to NRS 687B.385 if a policyholder was fifty percent or more at fault for an auto accident. The reasonableness of State Farm's chargeable accident rule is at issue in this case.

On July 13, 1993, State Farm filed requests with respondent, the Division of Insurance,[1] for automobile insurance rate increases, seeking overall premium rate hikes of 1.8 percent and 4.9 percent. Thereafter, Charles Knaus, Division of Insurance actuary, advised State Farm that its rate filings were complete, and that he would recommend approval of the proposed rate increases.

However, on February 16, 1994, Knaus advised State Farm that the requested rate increases would be disapproved pursuant to NRS 686B.050(1), the Nevada Insurance Code provision prohibiting excessive premium rates.

Prior to this point in time, the Division had not contested the validity of State Farm's definition of "chargeable accident." Further, no regulation defining the term had been promulgated. Accordingly, State Farm requested an explanation for the denial of its rate increase based on its existing chargeable accident rule.

In response, the Division explained that it had consistently interpreted the meaning of "fault" in NRS 687B.385 to mean negligence exceeding fifty percent of the total causal negligence in connection with an accident. Thus, it concluded that State Farm's practice of surcharging drivers who were only fifty percent "at fault" violated NRS 687B.385.

---

[1]The Commissioner of Insurance and the Division of Insurance are hereinafter collectively referred to as the "Division" except where it is necessary to distinguish between the Commissioner and the Division.

Subsequently, a hearing officer agreed with the Division's position that it could reject State Farm's rate increase request. On December 1, 1994, the Commissioner of Insurance issued an order affirming the hearing officer's decision.

On January 20, 1995, State Farm filed a petition for judicial review of the Commissioner's order in district court. State Farm's petition challenged that portion of the Commissioner's order which conditioned approval of State Farm's automobile insurance rate increase on modification of its "chargeable accident rule."

On February 1, 1995. the district court granted State Farm's request for a temporary restraining order staying enforcement of the Commissioner's order as to the "chargeable accident" rule. The district court also permitted State Farm to implement its rate increase.

On November 5, 1995, the district court entered an order affirming the Commissioner's determination. The district court held that the Commissioner had the authority to require State Farm to (1) modify its chargeable accident rule as part of the rate increase application proceeding, and (2) to require State Farm to modify its definition of "chargeable accident" to apply to insureds who were more than fifty percent at fault in an accident. Finally, the district court required State Farm to rescind the previously approved and implemented rate increase and refund the overage to its policyholders if it failed to prospectively modify its chargeable accident rule within thirty days of the order.

On January 29, 1996, the district court granted State Farm's motion to delete the portion of the order requiring State Farm to rescind or refund its rate increases unless it complied with the Commissioner's order. State Farm timely appealed and the Division cross-appealed.[2]

On February 26, 1996, shortly after the notices of appeal were filed, the Commissioner adopted an amendment to the Nevada Administrative Code Section 690B.230(2). This amended regulation provides that an insurer's definition of "chargeable accident" may only include those accidents for which the insured is more than fifty percent at fault. On April 30, 1996, State Farm filed a separate action for declaratory relief in the district court of Clark County, Nevada, to determine the validity of the amended regulation.

---

[2]The Division cross-appealed the district court's order granting State Farm's NRCP 52(b) motion to alter and to amend the original judgment. The amended order deleted the paragraphs in the original judgment tying State Farm's rate increase to the implementation of the modified chargeable accident rule and requiring State Farm to refund the rate increase amount to its policyholders if the rule was not implemented within thirty days. The court's holding herein renders the Division's cross- appeal moot.

On September 4, 1997, the district court, in the separate action, rendered summary judgment in favor of State Farm, issuing a declaratory judgment order that the Division's amended regulation was invalid. The district court also entered a permanent injunction enjoining the Division "and all persons with notice of this order and judgment" from enforcing the provisions of NAC 690B.230(2), the amended regulation.

On September 12, 1997, this court issued an order granting State Farm's motion to take judicial notice of the judgment entered by the district court in the declaratory judgment action. Although we have taken judicial notice of the declaratory judgment, it does not impact our decision in this matter.

## DISCUSSION

### Standard of Review

The administrative construction of a statute is a question of law which is subject to independent appellate review. Unlike appeals from administrative factual adjudications, which are subject to a "substantial evidence" standard, an administrative agency's legal determinations are accorded less deference on appeal. Further, "[r]eview in this court from a district court's interpretation of a statute is de novo." State, Dep't of Mtr. Vehicles v. Frangul, 110 Nev. 46, 48, 867 P.2d 397, 398 (1994). Accordingly, this court considers the district court's interpretation of NRS 687B.385 de novo.

In its order affirming the decision of the Commissioner of Insurance, the district court in this matter found that, with regard to the validity of the Division's chargeable accident rule:

> 4. The Commissioner had authority to consider the issue of the chargeable accident rule (NRS 687B.385) as part of the rate request pursuant to NRS 686B.100, which allows the Commissioner to require the filing of supporting data which may include "[a]ny other relevant matters required by the Commissioner. . . ." NRS 686B.100(1)(d).
> 5. An insurer's chargeable accident rule is relevant to an insurer's rate increase request because a surcharge is an increase in rates . . . .
> 6. The Division interpretation of NRS 687B.385, which requires that an insured must be over 50 percent at fault before he may be surcharged for an accident, is a reasonable interpretation of the statute, which based upon the legislative history and what the statute was trying to accomplish, is not open to varying interpretations.

Accordingly, the district court ordered that the rate increase

conditionally approved by the Division be permanently approved upon modification of State Farm's chargeable accident rule and compliance with Nevada law "requiring over fifty percent liability before an insured may be surcharged pursuant to NRS 687B.385 . . . ."

State Farm maintains that it has never disputed the Commissioner's authority to consider its chargeable accident rule pursuant to NRS 686B.100, as part of a rate increase proceeding.[3] Instead, State Farm raises only two claims on appeal: first, that its chargeable accident rule is based on a proper construction of the "at fault" provision in NRS 687B.385 and that the Division's interpretation is erroneous; and second, that the Division engaged in rulemaking in violation of NRS 233B of the Administrative Procedures Act, when it ordered State Farm to change its chargeable accident rule as a condition to approval of its otherwise proper rate increase request.

For the reasons set forth below, we conclude that, in the absence of a regulation promulgated by the Division pursuant to NRS 687B.385, State Farm's rate structure for chargeable accidents was reasonable. We also conclude that the Division engaged in improper rule making in violation of the notice and hearing requirements of the Administrative Procedures Act ("APA").[4]

*Statutory Construction*

The well-settled rule that,

> "[w]here the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the court are not permitted to search for its meaning beyond the statute itself."

Erwin v. State of Nevada, 111 Nev. 1535, 1538, 908 P.2d 1367, 1369 (1995) (quoting Charlie Brown Constr. Co. v. Boulder City, 106 Nev. 497, 503, 797 P.2d 946, 949 (1990)). However, where a statute has no plain meaning, a court should consult other

---

[3]NRS 686B.100 provides that the Commissioner may require an insurer to submit supporting data regarding its rates. Subsections (1)(a), (b) and (c) list specific categories of data that must be provided; these include an insurer's definition of "chargeable accident." Subsection (1)(d) is a catchall provision that authorizes the Commissioner to require the insurer to provide data on any other "relevant matter."

[4]In so concluding, we do not suggest that the Division's chargeable accident rule is per se unreasonable. As we decide the instant case in the absence of any regulation construing NRS 687B.385, we reserve the question of the validity of the Division's subsequently promulgated regulation for a future date.

sources such as legislative history, legislative intent, and analogous statutory provisions. *See* Moody v. Manny's Auto Repair, 110 Nev. 320, 325, 871 P.2d 935, 938 (1994).

Having considered the parties arguments as well as the statutory language itself, we conclude that the term "at fault" is reasonably susceptible to varying interpretations. *See* Hotel Employees v. State, Gaming Control Bd., 103 Nev. 588, 591, 747 P.2d 878, 879 (1987). This lack of plain meaning leaves room for judicial construction. Accordingly, this court considers the legislative history and intent underlying the statute.

### 1. *Legislative History*

The exact meaning of "at fault" is not stated in the legislative history. However, discussions held at the legislative hearings demonstrate concern about the "at fault" language in the statute; specifically, how to determine which party was at fault in a motor vehicle accident.

A reading of the legislative history as a whole shows that the legislature believed that an insured's individual premium structure would be adversely affected by a claim only if the insured was at fault. The legislators viewed the issue of fault, under NRS 687B.385, in the context of whether or not the insurance company would be required to pay a claim against the insured. Although there is no express definition of the term "at fault," there is also no indication that the legislature believed that only one person could be considered at fault in an accident. Accordingly, we consider whether the "at fault" provision in the NRS 687B.385 is related to a determination of fault in the tort liability context.

### 2. *Legislative Intent—Statutes in Pari Materia*

State Farm argues that NRS 687B.385 should be construed consistently with NRS 41.141, Nevada's comparative negligence statute. The meaning of a statute may be determined by referring to laws which are "in pari materia." *See* Goldstein v. State, 803 S.W.2d 777, 788 (Tex. App. 1991). "Statutes may be said to be in pari materia when they relate to the same person or things, to the same class of persons or things, or have the same purpose or object." *Id.* State Farm contends that NRS 687B.385 and NRS 41.141 are clearly in pari materia, as each statute invokes the concept of "fault."

NRS 41.141 provides, in pertinent part:

> 1.   In any action to recover damages for death or injury to persons or for injury to property in which comparative

> negligence is asserted as a defense, the comparative negligence of the plaintiff . . . does not bar a recovery if the negligence was not greater than the negligence . . . of the parties to the action against whom recovery is sought.

Under NRS 41.141, a plaintiff who is fifty percent at fault is not barred from recovery, but his damages are reduced by his own percentage of negligence. *See* Moyer v. United States, 593 F. Supp. 145 (D. Nev. 1984). Thus, in a two-party car accident, a defendant whose negligence constituted fifty per cent of the total causal negligence in connection therewith, is liable to the plaintiff for fifty percent of her damages.

State Farm argues that the Nevada legislature had NRS 41.141 in mind when it incorporated the phrase "at fault" into NRS 687B.385. In support of this proposition, State Farm suggests that NRS 41.141 codifies Nevada's well-settled policy to impose civil liability on a person who is fifty percent at fault in causing an accident. This means that in a given accident, two equally at fault parties, both covered by liability insurance, are liable to each other with their respective insurers having to pay damages to the opposing party. Accordingly, State Farm maintains that "a specific definition of 'at fault' in NRS 687B.385 was not required, because an insured's liability for negligence or fault was already defined in NRS 41.141."[5]

We conclude that, in the absence of a regulation to the contrary, State Farm reasonably construed the "at fault" provision in NRS 687B.385 consistently with NRS 41.141. It is clear that there is a direct doctrinal connection between the resolution of a claim under the liability coverage of an auto insurance policy and the determination of "fault" pursuant to the statutory doctrine governing tort liability.

In the context of a claim against an insured based on the operation of an automobile, the insured's liability or "fault" is determined by the laws of negligence. Under NRS 41.141, a defendant who is fifty percent at fault is legally liable to the plaintiff for fifty percent of the plaintiff's damages. Therefore,

---

[5]As a practical matter, State Farm concedes that the number of claims in which an insured will actually be exactly fifty percent negligent is small. The former advocate for insurance customers, who was a party to this litigation at its inception, argued in opposition to State Farm's request for a stay of the Commissioner's order that "the chances of anyone in this state having a truly fifty/fifty fault situation that would require State Farm to go through these onerous changes they claim they are going to experience is very slim." Although State Farm is aware that the actual impact of the chargeable accident rule issue is minor, State Farm maintains that its rule is the correct interpretation of the statute and it objects to being coerced into accepting the Division's incorrect interpretation.

absent a regulation based on a reasonable construction of NRS 687B.385, an insured who is fifty percent at fault with regard to a claim under the policy may be validly subject to an increase in his policy premium or other adverse actions such as non-renewal or cancellation. Accordingly, we reverse the district court.

*Rule Making*

Having interpreted NRS 687B.385, we turn to consider whether the Division engaged in improper rule making in violation of the notice and hearing requirements of the APA when it compelled State Farm to modify its definition of a chargeable accident for purposes of implementing an insurance rate hike.

The APA was adopted to establish minimum procedural requirements, such as notice and hearing, for all rule making by non-exempt state government agencies. The notice and hearing requirements are not mere technicalities; they are essential to the adoption of valid rules and regulations. *See* Public Serv. Comm'n v. Southwest Gas, 99 Nev. 268, 273, 662 P.2d 624, 628 (1983) (stressing the importance of following the APA).

When an agency takes certain action not expressly noticed as rule making, the issue becomes whether the agency is engaging in rule making such that the APA safeguards for promulgating regulations apply or whether the agency is merely making an "interpretive ruling."

The Nevada APA defines a regulation as an "agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure, or practice requirements of an agency." NRS 233B.038. By contrast, an interpretive ruling is merely a statement of how the agency construes a statute or a regulation according to the specific facts before it. *See* General Motors Co. v. Ruckelshaus, 742 F.2d 1561, 1565 (U.S. App. D.C. 1985) (holding that an "interpretive rule" in the federal context means a rule that simply states what the administrative agency construes a statute to mean, and only reminds affected parties of existing legal duties).

This court has addressed the distinction between "regulations" and "interpretive rulings" in a number of cases, including those cited by the parties. Of particular note is this court's decision in Public Service Comm'n v. Southwest Gas Corp., 99 Nev. 268, 273, 662 P.2d 624, 628 (1983). There, the Public Service Commission ("PSC") attempted to use a utility rate increase proceed-

ing as a forum for imposing new "rate design" requirements affecting the manner in which public utilities charged various categories of customers. In holding that the PSC was engaging in rule making, this court stated:

> Although the order changing Southwest's rate designee is directed to Southwest only, it certainly has "general applicability" which affects other gas utilities and their customers. . . . The order is of such major policy concern and of such significance to all utilities and consumers that it cannot be characterized as a simple adjudication in a contested case thus outside of the statutory definition of a regulation.

*Id.; see* NRS 233B.038(1).

In other cases, this court has not hesitated to invalidate agency actions in which the agency was formulating a rule of policy or general application and not merely making an interpretive ruling according to the facts before it. *See* Las Vegas Transit v. Las Vegas Strip Trolley, 105 Nev. 575, 780 P.2d 1145 (1989) (agency's adoption of new definition of "trolley" should have been subject to formal rule making proceeding); State Bd. of Equal. v. Sierra Pac. Power, 97 Nev. 461, 634 P.2d 461 (1981) (agency should have complied with procedural rule making requirements in adopting new method or formula for calculating property taxes).

We conclude that the Division has engaged in rule making in violation of NRS 233B. First, we conclude that the Division's definition of chargeable accident was a statement of general applicability that effectuated agency policy on surcharging Nevada insureds. Thus, the Division should have followed the rule making procedures in APA. As we have determined, the term "at fault" in NRS 687B.385 has no plain meaning. NRS 687B.385 on its face does not necessarily compel an interpretation that an insured be at least fifty-one percent at fault. The Division's interpretation effectuates its unilateral policy that, for these purposes, only one individual can be considered "at fault" in an auto accident. This determination affects not only State Farm and its insureds, but any Nevada insurance company operating pursuant to a chargeable accident rule. As such, the Division's chargeable accident rule falls within the ambit of an agency regulation that implicates the Nevada Administrative Procedures Act. The district court erred in concluding otherwise.

We therefore reverse the district court's decision in this matter.