## SOUTHERN NEVADA OPERATING ENGINEERS CONTRACT COMPLIANCE TRUST, APPELLANT, v. TERRY JOHNSON, LABOR COMMISSIONER, STATE OF NEVADA; AND CRYSTAL CASCADES, RESPONDENTS.

No. 42093

September 15, 2005 119 P.3d 720

*McCracken Stemerman Bowen & Holsberry* and *Andrew J. Kahn* and *Richard G. McCracken,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, *Dianna Hegeduis,* Senior Deputy Attorney General, and *Patricia A. Palm,* Deputy Attorney General, Carson City, for Respondent Labor Commissioner.

*Curran & Parry* and *Stanley W. Parry,* Las Vegas, for Respondent Crystal Cascades.

*Schreck Brignone* and *Andrew S. Brignone, Michael A. Kristof* and *Elayna J. Youchah,* Las Vegas, for Amicus Curiae Nevada Contractors Association.

524

**OPINION**

By the Court, ROSE, J.:

In this appeal, we address whether the Labor Commissioner's decision to exclude a class of workers from receiving the prevail-

ing wage under a public works contract constituted a determination in a contested case or a regulation that was subject to the Nevada Administrative Procedure Act's[1] (APA) rulemaking procedures. We conclude that the Labor Commissioner's decision effectively deleting an entire class of workers from a previously adopted regulation constituted administrative rulemaking, which required the Labor Commissioner to follow the APA's provisions.[2] Because the Labor Commissioner failed to follow the APA's procedures, we reverse the district court's order upholding the Labor Commissioner's decision.

## FACTS

Every year in October, the Labor Commissioner publishes a regulation that provides the prevailing wage rates that must be paid to workers employed on public works. The prevailing wages list establishes the hourly rates that must be paid to the corresponding classes of workers. Each year from 1998 through 2002, the Labor Commissioner's office included the job classification of ''soils field technician'' or ''fields soil and material tester'' in its published list of jobs covered under the state's prevailing wage laws.

In November 2001, respondent Crystal Cascades entered into a contract with Clark County to perform work on a public works project. The contract called for compliance with Nevada's prevailing wage laws and required Crystal Cascades to pay the prevailing wages in effect at the time the contract was made. Crystal Cascades hired a subcontractor, Aztech Materials Testing, to perform work on the project. Ryan Creelman, an Aztech employee, worked on the project as a soils tester. Aztech paid Creelman $16 per hour for his work, a figure significantly lower than the required prevailing wage rate of $34.09 per hour for soils field technicians.

Appellant Southern Nevada Operating Engineers Contract Compliance Trust (the Trust), a labor-management trust organized by the Operating Engineers Union Local 12 and by unionized employers, including those who employ soils testers, discovered that Aztech had failed to pay Creelman the prevailing wage as required under the contract. As a result, the Trust complained to the County. The Trust did not file its complaint on behalf Creelman. Instead, the Trust contends that its members were aggrieved because the union contract required soils testers to be paid an hourly rate at least as high as the published prevailing wage and because

[1] NRS Chapter 233B.

[2] NRS 233B.038(1)(a) states that a regulation is ''[a]n agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure or practice requirements of any agency.'' The prevailing wage lists direct employers to pay the prevailing wage to employees performing certain types of work. The lists are, therefore, a regulation.

prevailing wage requirements provide unionized employers with a more level playing field to compete against nonunion employers who would otherwise pay less than the union contract rate.

After conducting an investigation, the County concluded that Creelman was entitled to the prevailing wage for soils field technicians. Aztech administratively appealed to the Labor Commissioner, who held an administrative hearing on the issue. Notice of the hearing was given only to the parties involved in the dispute. At the hearing, an Aztech engineer and Aztech's CEO David McDonough testified regarding the work that soils testers, and specifically, Ryan Creelman perform. McDonough testified that Creelman should be exempted from the prevailing wage law because Aztech provided the services of a design professional and Creelman was under its supervision and control.

Creelman also testified regarding the type of work he performed as a "soils tester." According to Creelman, the job required significant time observing the placement of materials on the job site. When required, Creelman also performed the requisite soils testing. Soils testing is accomplished by pounding a metal pin 12 inches into the ground, wiggling it out, and dropping a nuclear gauge into the hole. Creelman would then perform tests and record the results of the test. Afterwards, Creelman would return to observing the placement of materials until the next time a "soils test" was required.

Under NRS 338.040, an individual must be deemed a "workman" in order to qualify for the prevailing wage. NRS 338.040 requires that a workman be (1) "[e]mployed at the site of a public work," and (2) "[n]ecessary in the execution of the contract for the public work." Patricia Woody, a Clark County compliance officer, testified that she believed that Creelman was a "workman" under the two-prong test of NRS 338.040 because he was employed at the site of a public work and was necessary to the contract's execution. Woody also testified that the County does not pay "soils testers" the prevailing wage. Ronald Yowell testified on the Trust's behalf and stated that material testing is necessary to the execution of any public works contract. According to Yowell, he had performed work as a "soils tester" on both state and federal projects and was paid the prevailing wage. Yowell also stated that it was his belief that Creelman was not a design professional but was instead a "workman" entitled to the prevailing wage.

Nevertheless, after the hearing, the Labor Commissioner concluded that soils testers did not fall within the definition of "workman" under NRS 338.010 and NRS 338.040 and were, therefore, not entitled to prevailing wages. Commissioner Johnson admitted that his office had transmitted various conflicting memoranda addressing the issue of the application of the prevailing wage to soils

testers. He noted further that the instant administrative proceedings provided an opportunity to receive testimony and ask questions about the nature of the work, the types of employers hired to perform the work, and the circumstances surrounding the contracting for this type of work.

The Labor Commissioner then stated that he believed too much emphasis was placed on the two-prong test of NRS 338.040. The Labor Commissioner noted that, instead, the controlling issue should be whether an individual was a "workman" within the purview of NRS Chapter 338 generally, which contains Nevada's public works laws, because otherwise the prevailing wage provisions, including NRS 338.040, would not apply. The Labor Commissioner noted that other individuals who meet the two-prong administrative test, like superintendents, suppliers, and project managers, are not considered workers within the meaning of the prevailing wage statutes.

The Labor Commissioner then determined that the term "workman" does not apply to Creelman because, "while he is not a licensed professional, his duties are more professional and administrative in nature than akin to those of a 'workman.'" The Labor Commissioner noted that, "Mr. Creelman did not build, construct, alter, repair or reconstruct any part of the public work [and] the Legislature intended prevailing wages to apply to 'workmen' who in fact engage in these types of duties to facilitate construction of a public works project." Importantly, the Labor Commissioner then stated that he thought that the "field soils tester" classification was likely "inadvertently included in the wage determinations within the past four years as a group classification when it should not have been." Subsequently, the Labor Commissioner removed soils testers from the prevailing wages list.

The Trust then petitioned the district court for judicial review of the Labor Commissioner's decision, which the district court denied. The Trust appeals, challenging the Labor Commissioner's decision on the basis that it constituted ad hoc rulemaking in violation of the APA.

## DISCUSSION

### Standard of review

The standard of deference accorded to an administrative decision on review turns largely on whether the issues raised by that decision are more appropriately deemed questions of law or of fact.[3] An administrative fact-based determination is entitled to a deferen-

[3]*See State, Bus. & Indus. v. Granite Constr.,* 118 Nev. 83, 86, 40 P.3d 423, 426 (2002).

tial standard of review.[4] But, this court reviews pure legal questions de novo.[5] In this case, we deal with issues of statutory construction. We have previously noted, we " 'may undertake independent review of the administrative construction of a statute.' "[6] Therefore, we will review the rulemaking issue raised by this appeal de novo.

## *Violation of the APA's rulemaking procedure*

The Trust argues compellingly that the Labor Commissioner violated the APA's procedural rulemaking requirements when he determined that an entire job classification was not entitled to protection under Nevada's prevailing wage laws. The Trust contends that such an action constitutes a form of regulation requiring compliance with the APA's rulemaking procedures. NRS 233B.038(1) defines a regulation as:

> (a) An agency rule, standard, directive or statement of general applicability which effectuates or interprets law or policy, or describes the organization, procedure or practice requirements of any agency;
>
> (b) A proposed regulation;
>
> (c) The amendment or repeal of a prior regulation; and
>
> (d) The general application by an agency of a written policy, interpretation, process or procedure to determine whether a person is in compliance with a federal or state statute or regulation in order to assess a fine, monetary penalty or monetary interest.

This court has stated that " '[a] properly adopted substantive rule establishes a standard of conduct which has the force of law. In subsequent administrative proceedings involving a substantive rule, the issues are whether the adjudicated facts conform to the rule.' "[7] When an agency engages in conduct that constitutes the making of a regulation, it must adhere to the notice and hearing requirements set forth under NRS 233B.060 and 233B.061.[8]

---

[4]*City Plan Dev. v. State, Labor Comm'r,* 121 Nev. 419, 426, 117 P.3d 182, 187 (2005).

[5]*Granite Constr.,* 118 Nev. at 86, 40 P.3d at 426.

[6]*Id.* at 86, 40 P.3d at 425-26 (quoting *American Int'l Vacations v. MacBride,* 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983)).

[7]*State Bd. Equal. v. Sierra Pac. Power,* 97 Nev. 461, 464, 634 P.2d 461, 463 (1981) (quoting *Pacific Gas & Electric Co. v. Federal Power Com'n,* 506 F.2d 33, 38 (D.C. Cir. 1974)).

[8]NRS 233B.060(1) provides: "Except as otherwise provided in subsection 2 and in NRS 233B.061, before adopting, amending or repealing any permanent or temporary regulation, the agency must give at least 30 days' notice of its intended action, unless a shorter period of notice is specifically permitted by statute." NRS 233B.061 states that:

The Labor Commissioner insists that the APA's rulemaking procedures do not apply in this case because his decision did not amend a regulation but rather "merely refused, in the context of a contested case, to uphold a classification that he determined was inconsistent with legislative intent and erroneous."[9] According to the Labor Commissioner, his decision was therefore not regulatory in nature under NRS 233B.038(2)(e), which specifically excludes "[a]n agency decision or finding in a contested case" from the definition of the term "regulation." We do not agree.

Instead, we conclude that the Labor Commissioner's decision was more closely akin to the amendment of a regulation under NRS 233B.038(1)(a) because the public works prevailing wages list effectuates the prevailing wage laws and policy by establishing the rates that apply to certain detailed classifications of workers. Therefore, the Labor Commissioner's decision in concluding that

---

1. All interested persons must be afforded a reasonable opportunity to submit data, views or arguments upon a proposed regulation, orally or in writing.
2. Before holding the public hearing required pursuant to subsection 3, an agency shall conduct at least one workshop to solicit comments from interested persons on one or more general topics to be addressed in a proposed regulation. Not less than 15 days before the workshop, the agency shall provide notice of the time and place set for the workshop:
 (a) In writing to each person who has requested to be placed on a mailing list; and
 (b) In any other manner reasonably calculated to provide such notice to the general public and any business that may be affected by a proposed regulation which addresses the general topics to be considered at the workshop.
3. With respect to substantive regulations, the agency shall set a time and place for an oral public hearing, but if no one appears who will be directly affected by the proposed regulation and requests an oral hearing, the agency may proceed immediately to act upon any written submissions. The agency shall consider fully all written and oral submissions respecting the proposed regulation.
4. The agency shall keep, retain and make available for public inspection written minutes of each public hearing held pursuant to subsection 3 in the manner provided in subsections 1 and 2 of NRS 241.035.
5. The agency may record each public hearing held pursuant to subsection 3 and make those recordings available for public inspection in the manner provided in subsection 4 of NRS 241.035.

[9]Under NRS 233B.032, a " '[c]ontested case' means a proceeding, including but not restricted to rate making and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, or in which an administrative penalty may be imposed." NRS 233B.035 defines a "party" as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any contested case." Thus, a decision in a contested case should determine only the rights of the parties involved in that particular proceeding and not impact the rights of others not involved in the proceeding.

the classification of "field soils tester" was improperly included on the list of prevailing wage "workmen" classification, effectively altered a prior regulation.

We stress that the Labor Commissioner's decision in this case is distinguishable from a situation in which the Labor Commissioner must simply determine, according to the facts, if an individual falls within a given predefined classification on the prevailing wage list. If, in this case, the Labor Commissioner had merely determined that the work Creelman performed was not the same work typically performed by a "field soils tester," then he would have been deciding an issue in a contested case, and his decision would not have been subject to the rulemaking requirements of the APA. In contrast, however, the Labor Commissioner determined whether a large group of individuals was entitled to the prevailing wage at all.

While this court has recently acknowledged that it is the Labor Commissioner's duty to "define a classification or type of work and then to determine the prevailing wage for that classification,"[10] we wish to emphasize that the fulfillment of this duty cannot arise out of a decision in a contested case. In *City Plan Development v. State, Labor Commissioner,* we stated that, "when acting in an adjudicative capacity, the Labor Commissioner must make any classification determination necessary to a complaint's resolution."[11] We now clarify that the Labor Commissioner must make, in the context of a prevailing wage claim, any determination necessary to conclude whether an individual fits within an existing classification. When acting in an adjudicative capacity, the Labor Commissioner may not determine whether an entire job classification should exist. As the Trust aptly notes, the Labor Commissioner's decision here affects a broad group of employees and their employers by eliminating the requirement that several engineering companies pay the prevailing wage to soils testers under their employ.

The Labor Commissioner's own actions following his decision lend credence to this observation. On January 15, 2003, the Labor Commissioner's office sent a letter, which included the Labor Commissioner's decision in the instant case, to a construction monitor who had complained that another company had failed to pay "soils testers" the prevailing wage on a different public works project. Apparently, the construction monitor, Bechtel, had already determined that MMC, Inc., had violated the prevailing wage requirements. The Labor Commissioner stated that "[i]t appears to me that the issue presented is similar to the case refer-

---

[10]*City Plan,* 121 Nev. at 432, 117 P.3d at 190.

[11]*Id.* at 432, 117 P.3d at 191.

enced above . . . . please advise if you believe this decision effects [sic] your determination and please provide a brief reason why." Thus, the Labor Commissioner's decision is already impacting parties beyond those involved in the instant case. As one federal court has poignantly observed, "if by its action the agency intends to create new law, rights or duties, the rule is properly considered to be a legislative rule."[12] We therefore conclude that the Labor Commissioner's decision was a statement of general applicability that effectuates his office's policy that soils testers are not included under Nevada's prevailing wage law and, thus, was subject to the APA's rulemaking requirements.[13]

Importantly, this court has previously refused to uphold an administrative body's conduct when it engaged in ad hoc rulemaking within the context of a contested case.[14] The APA sets forth minimum procedural requirements, such as notice and a hearing, when agencies engage in rulemaking activity. Again, we reiterate that "[t]he notice and hearing requirements are not mere technicalities; they are essential to the adoption of valid rules and regulations."[15] In this instance, the Labor Commissioner's failure to follow the APA's notice and hearing requirements rendered his decision invalid.

We note that this conclusion comports with the statutes that guide the Labor Commissioner's determinations under the prevailing wage laws. NRS 338.040 permits the Labor Commissioner to adopt regulations defining the circumstances under which an employee on a public works project meets the definition of a "workman" and is therefore entitled to the prevailing wage. Under NRS 338.030, the Labor Commissioner may change the prevailing wage

---

[12]*General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C. Cir. 1984).

[13]We similarly reject the argument that the Labor Commissioner's actions in this case are exempted from the requirements of the APA because the Labor Commissioner was engaging in rate-making, which includes the integral duty to classify those jobs entitled to the prevailing wage. This court has previously noted that decisions involving rate-making are also subject to the requirements of the APA. *See State Farm Mut. v. Comm'r of Ins.,* 114 Nev. 535, 543-44, 958 P.2d 733, 738 (1998) (holding that notice and a hearing were required before the Commissioner of Insurance could require an insurance company to change its definition of "at fault" in order to secure approval of an increase in insurance rates); *see Public Serv. Comm'n v. Southwest Gas,* 99 Nev. 268, 273, 662 P.2d 624, 628 (1983) (holding that proper notice and a hearing were required prior to issuing an order changing the gas rate design, which raised prices for certain groups of customers).

[14]*State Farm,* 114 Nev. at 543-44, 958 P.2d at 738.

[15]*Id.* at 543, 958 P.2d at 738 (citing *Southwest Gas,* 99 Nev. at 273, 662 P.2d at 628).

rates and classifications but may hold only one hearing a year on the prevailing wage of any craft or type of work in any county.[16] Interested parties then have 30 days to challenge the validity of the Labor Commissioner's prevailing wage determinations.[17]

Because the Labor Commissioner's actions in the instant case had the effect of removing an entire classification from the prevailing wage list, thereby changing the wage due to all "soils testers," it also constitutes action under NRS 338.030 which any interested parties should have been provided the opportunity to challenge.[18] We note that any interested parties could have challenged the Labor Commissioner's decision had he chosen to alter the prevailing wage paid to "field soils testers" at the end of the year under NRS 338.030.[19] As we stated in *State of Nevada v. City of Fallon,* the Labor Commissioner's failure to notify and to "accord interested parties affected by his action a reasonable opportunity to be heard renders his action invalid as based upon unlawful procedure."[20]

## *CONCLUSION*

The notice and hearing requirements of the APA must be met when the Labor Commissioner changes the published prevailing wages list. We conclude that the Labor Commissioner engaged in ad hoc rulemaking in violation of the APA's notice and hearing requirements when he effectively eliminated the "field soils testers" classification from the prevailing wages list regulation in the context of rendering a decision in a contested case.

---

[16]We acknowledge that this statute deals specifically with the Labor Commissioner's establishment of prevailing wage rates. But, as the Labor Commissioner noted, the establishment of a classification is an integral part of determining the wage rates employees are entitled to be paid. *City Plan,* 121 Nev. at 432, 117 P.3d at 190.

[17]NRS 338.030; NAC 338.060.

[18]We also reject the Labor Commissioner's argument that soils testers are not entitled to the prevailing wage because they have not traditionally been included amongst those workers for whom the Labor Commissioner has established a prevailing wage. At some point, the Labor Commissioner added soils testers to the list of those jobs entitled to the prevailing wage. This suggests that the Labor Commissioner's office, of its own accord, determined that soils testers were workmen within the statutory definition. If the Labor Commissioner mistakenly added the job of soils testers to its list of classifications, he should have removed it only after providing the opportunity for notice and a hearing.

[19]This court will not address those issues pertaining to the Labor Commissioner's subsequent deletion of the classification of "soils tester" from the prevailing wage list. We note, however, that such an action seems to be a mere formality in the wake of the Labor Commissioner's decision in this case as it was apparent from the Labor Commissioner's decision that no "soils tester" was entitled to be paid the prevailing wage.

[20]100 Nev. 509, 517, 685 P.2d 1385, 1390-91 (1984).

Accordingly, the Labor Commissioner's decision is invalid, and we reverse the district court's order denying the Trust's petition for judicial review and remand for further proceedings.

BECKER, C. J., MAUPIN, GIBBONS, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.