OPINION
 

 Per Curiam:
 

 In this appeal, we consider whether an employer and a union can be held liable for willfully interfering with an employee’s rights under a collective bargaining agreement when through inaction they failed to provide the employee with a pre-termination hearing on her request. We affirm the district court’s decision and conclude that such inaction amounted to willful interference with the employee’s attempt to exercise her rights under the collective bargaining agreement.
 

 FACTS
 

 Iris Orr was employed as an X-ray technician by University Medical Center (UMC), a local government employer in Las Vegas, Nevada. Orr was a nonunion employee, but her position is governed by the collective bargaining agreement between UMC and the Nevada Service Employees Union, Local 1107 (the Union). On July 27, 2000, UMC suspended Orr pending termination for allegedly releasing patient information without authorization, leaving the hospital without authorization, and insubordination.
 

 Orr’s attorney wrote to UMC’s Director of Human Resources requesting a pre-termination hearing under Article 9 of the collective bargaining agreement. Orr signed the letter acknowledging her request for a hearing. A copy of the letter was then forwarded to the Union’s Executive Director. UMC’s Labor and Employee Relations Manager testified that a copy of the letter was also forwarded to the Union’s Chief Steward for the unit where Orr works. Under the collective bargaining agreement, the grievance process begins when the chief steward signs the letter for the Union and returns a copy to UMC. The Union, however, never returned a signed copy of Orr’s letter to UMC, and after ten days, UMC assumed that Orr waived her right to a pre-termination hearing and terminated her employment.
 

 Consequently, Orr filed a complaint with the Employee-Management Relations Board (the Board) seeking an injunction precluding her termination without a pre-termination hearing, the restoration of her benefits, the award of reasonable costs and attorney fees, and such other relief as justified. Following a hearing, the Board entered its decision and order finding that: (1) Orr was an employee covered under the collective bargaining agreement between
 
 *678
 
 UMC and the Union; (2) she requested a pre-termination hearing within the 10-day period specified in Article 9, Step 2 of that agreement; (3) the Union made a conscious decision not to sign Orr’s letter in contravention of the agreement; (4) UMC was aware of Orr’s request; (5) due to the Union’s failure to sign the letter, UMC considered the hearing waived; and (6) UMC terminated Orr without conducting the required pre-termination hearing. The Board further determined that, under NRS 288.270(l)(a) and NRS 288.140, UMC and the Union willfully interfered with and restrained Orr’s rights under the collective bargaining agreement.
 

 The Board directed UMC to restore all of Orr’s benefits, provide back pay from the date of termination, and reimburse Orr the cost of medical insurance incurred as a result of her termination. The Board further ordered both the Union and UMC to comply with the arbitration provisions of the collective bargaining agreement in an expedited manner and allowed Orr to waive the pre-termination hearing and proceed directly to arbitration. Finally, the Board ordered the Union and UMC to reimburse Orr for attorney fees and costs related to this matter.
 

 Both the Union and UMC filed petitions for rehearing, which the Board denied. UMC filed a petition for judicial review in which the Union, Orr, and the Board participated. The district court affirmed the Board’s findings of fact and conclusions of law and its award of attorney fees and costs, as well as its decision to allow Orr to waive the pre-termination hearing and proceed directly to arbitration. However, the district court reversed the Board’s award of back pay and insurance premium benefits, concluding that such an award was outside the Board’s authority under NRS 288.110. The Union appealed the district court’s order, and Orr cross-appealed.
 
 [1]
 

 DISCUSSION
 

 The Board’s decision
 

 When reviewing an administrative decision, this court reviews the evidence in the record to determine whether the agency’s decision was in excess of its authority, affected by errors of law, arbitrary or capricious, or otherwise characterized by an abuse of discretion.
 
 [2]
 
 We review issues of law de novo.
 
 [3]
 
 However, on factual issues, our review is limited to the evidence contained in the
 
 *679
 
 record, and we will not substitute our judgment for that of the agency.
 
 [4]
 
 Thus, on factual disputes, we review the record for substantial evidence.
 
 [5]
 
 Substantial evidence is described as “ ‘evidence which a reasonable [person] could accept as adequate to support a conclusion.’ ”
 
 [6]
 

 NRS 288.270 prohibits a government employer, such as UMC, or an employee organization, such as the Union, from willfully “interfering] with, restraining] or coercing] any employee in the exercise of any right guaranteed under” NRS Chapter 288.
 
 [7]
 
 Under NRS 288.140(2), an employee may act on his or her own behalf without union representation, “but any action taken on a request or in adjustment of a grievance shall be consistent with the terms of an applicable negotiated agreement.’ ’
 
 [8]
 

 Under Article 9, Step 2 of the collective bargaining agreement between the Union and UMC, an employee, or the Union on behalf of the employee, may file a formal written grievance within ten days of the adverse employment action. The agreement states that after a written grievance is received, “[a]ll actions and time limits will start upon Human Resources’ receipt of the Chief Steward’s or field representative’s signature.” The inclusion of the signature requirement provides a starting point for the timing of all actions and grievances, and without that signature no further action on a matter occurs. Therefore, the signature requirement is not obviated
 
 merely
 
 because the Union received a copy of Orr’s letter.
 

 It is uncontroverted that Orr requested but never received a pre-termination hearing. The Union does not dispute that it failed to sign off on Orr’s request letter, and UMC admits that it failed to obtain the Union’s signature. The express terms of the collective bargaining agreement require the Union to sign the letter to begin the grievance process and UMC to provide a pre-termination hearing. As part of providing a pre-termination hearing, UMC was required to obtain a signature from the Union. This requires more action by UMC than simply waiting for the Union to act.
 

 
 *680
 
 Thus, the Board did not err in concluding that the Union and UMC failed to act in accord with the express terms of the collective bargaining agreement.
 
 [9]
 
 The Union’s decision not to sign Orr’s letter requesting a pre-termination hearing was not a judgment call or good-faith interpretation of the collective bargaining agreement. Under the agreement, signing off on the request is a ministerial act that does not require the exercise of judgment.
 
 [10]
 
 This is especially the case for nonunion employees because their right to a pre-termination hearing will be denied by the Union’s refusal to sign off on a request.
 

 We have previously noted that “ ‘[wjillful’ is a word ‘of many meanings, its construction often being influenced by its context.’ ”
 
 [11]
 
 According to Black’s Law Dictionary, “willful” describes actions that are “[voluntary and intentional, but not necessarily malicious.”
 
 [12]
 
 We adopted this definition in the context of judicial ethics, stating that-“willful misconduct occurs when the actor knows he or she is violating a judicial Canon or rule of professional conduct and acts contrary to that Canon or rule,” and rejecting the idea that bad faith or malice is required.
 
 [13]
 

 
 *681
 
 Therefore, the record adequately supports the Board’s determination that the Union’s failure to acknowledge or sign Orr’s letter constituted a willful interference with or restraint of Orr’s attempt to exercise her rights under the collective bargaining agreement. We further conclude that the Board’s conclusion that UMC willfully interfered with Orr’s exercise of her rights by failing to obtain the Union’s signature and failing to provide Orr with a pre-termination hearing is supported by substantial evidence.
 

 The Board’s authority
 

 Orr argues, in her cross-appeal, that the district court erred in finding that the Board exceeded its statutory authority under NRS 288.110 when it awarded back pay and benefits. We review the interpretation of a statute de novo.
 
 [14]
 
 The plain language of NRS 288.110(2) provides the Board with the authority to “order any person to refrain from the action complained of or to restore to the party aggrieved any benefit of which he has been deprived.”
 

 According to Article 10, paragraph 3 of the collective bargaining agreement, when UMC wishes to terminate an employee covered under the agreement, that employee is placed on suspension without pay pending the outcome of a pre-termination hearing. In this case, the pre-termination hearing never occurred. Under NRS 288.110(2) the Board only had the authority to restore Orr to her previous status of suspended without pay. Therefore, the district court did not err in determining that the Board exceeded its statutory authority when it ordered UMC to pay Orr back salary and reimburse her for health insurance premiums she paid. Once Orr is returned to her rightful position of being suspended without pay pending a pre-termination hearing, the results of that hearing or any subsequent arbitration, will determine whether her suspension pending termination was without cause.
 
 [15]
 
 Finally, we agree
 
 *682
 
 with the Board that permitting Orr to waive the pre-termination hearing and proceed directly to arbitration is appropriate under the terms of the collective bargaining agreement.
 

 CONCLUSION
 

 The record adequately supports the Board’s determination that the Union’s failure to acknowledge or sign Orr’s letter and UMC’s failure to obtain the Union’s signature and provide Orr with a pre-termination hearing constituted willful interference with Orr’s attempt to exercise her rights under the collective bargaining agreement. We further conclude that the Board exceeded its statutory authority when it ordered UMC to pay Orr back salary and reimburse her for health insurance premiums she paid. Accordingly, we affirm the judgment of the district court.
 

 [1]
 

 UMC filed a separate reply to Orr’s cross-appeal. Therefore, as applicable in this opinion, we will consolidate the Union’s and UMC’s arguments.
 

 [2]
 

 NRS 233B. 135(3).
 

 [3]
 

 See Clements
 
 v.
 
 Airport Authority,
 
 111 Nev. 717, 722, 896 P.2d 458, 461 (1995).
 

 [4]
 

 NRS 233B. 135(1), (3);
 
 Secretary of State
 
 v.
 
 Tretiak,
 
 117 Nev. 299, 305, 22 P.3d 1134, 1138 (2001).
 

 [5]
 

 SIIS
 
 v.
 
 Swinney,
 
 103 Nev. 17, 20, 731 P.2d 359, 361 (1987).
 

 [6]
 

 State, Emp. Security
 
 v.
 
 Hilton Hotels,
 
 102 Nev. 606, 608 n.1, 729 P.2d 497, 498 n.1 (1986) (quoting
 
 Robertson Transp. Co. v. P.S.C.,
 
 159 N.W.2d 636, 638 (Wis. 1968)).
 

 [7]
 

 NRS 288.270(1)(a), (2)(a).
 

 [8]
 

 NRS 288.140(2) provides:
 

 The recognition of an employee organization for negotiation, pursuant to this chapter, does not preclude any local government employee who is not a member of that employee organization from acting for himself with respect to any condition of his employment, but any action taken on a request or in adjustment of a grievance shall be consistent with the terms of an applicable negotiated agreement, if any.
 

 [9]
 

 The Union argues that it is inconsistent to fault UMC for not providing Orr with a pre-termination hearing while also stating that until the Union signs the document, no time limits begin to run. According to the Union, only one of the two of them may be at fault — the Union for not returning the required signature or UMC for not providing the requested pre-termination hearing. The problem with this argument is that once an employee requests a pre-termination hearing, both prerequisites must occur. Under the express terms of the collective bargaining agreement, the Union has an obligation to sign off so that the process may begin, and UMC is required to provide a pre-termination hearing before terminating the employee; however, in this instance neither occurred. The logic of the Union’s argument fails because, under NRS Chapter 288, by entering into a collective bargaining agreement, the parties are bound by the terms of that agreement.
 

 [10]
 

 The Union argues that its conduct “need not be error free,” because if its conduct was merely negligent, it did not breach the duty of fair representation. The Union further argues that if its actions were based on a good-faith interpretation of the collective bargaining agreement and “not made in reckless disregard” of an employee’s rights, it did not violate NRS 288.140 and NRS 288.270. We disagree. There is a significant difference between cases where a union makes a judgment between two alternative courses of action and cases where a union utterly fails to complete a required ministerial act. In the present case, it was not the Union’s failure to notify that amounted to negligence, but its willful disregard for the procedures stated in the plain language of the collective bargaining agreement.
 

 [11]
 

 Matter of Fine,
 
 116 Nev. 1001, 1021, 13 P.3d 400, 413 (2000) (quoting
 
 Screws
 
 v.
 
 United States,
 
 325 U.S. 91, 101 (1945) (citing
 
 Spies v. United States,
 
 317 U.S. 492, 497 (1943))).
 

 [12]
 

 Black's Law Dictionary
 
 1593 (7th ed. 1999).
 

 [13]
 

 Fine,
 
 116 Nev. at 1022, 13 P.3d at 413-14.
 

 [14]
 

 NRS 233B. 135(3);
 
 Diamond
 
 v.
 
 Swick,
 
 117 Nev. 671, 674, 28 P.3d 1087, 1089 (2001).
 

 [15]
 

 Orr argues that an arbitrator is without the power to provide such a remedy. However, Article 9, Step 3, paragraph (2)(b) of the collective bargaining agreement specifically authorizes an arbitrator to issue an award retroactive “to the date of the alleged violation or date of filing of the grievance.” Orr’s citation to
 
 Reno Police Protective Assoc.
 
 v.
 
 City of Reno,
 
 102 Nev. 98, 102, 715 P.2d 1321, 1324 (1986), is equally unpersuasive because the officer in that case was demoted, not suspended without pay, making the award of back pay appropriate.