CENTURY STEEL, INC., APPELLANT, v. THE STATE OF NEVADA, DIVISION OF INDUSTRIAL RELATIONS, OCCUPATIONAL SAFETY AND HEALTH SECTION, NKA NEVADA OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, RESPONDENT.

No. 43916

July 13, 2006                                        137 P.3d 1155

---

*J. Michael McGroarty, Chtd.*, and *Susan M. Harrelson*, Las Vegas, for Appellant.

*Robert A. Kirkman*, Carson City, for Respondent.

Before DOUGLAS, BECKER and PARRAGUIRRE, JJ.

## OPINION

*Per Curiam:*

The Occupational Safety and Health Review Board determined that appellant Century Steel, Inc., was appropriately cited for willfully violating a workplace safety regulation. Century Steel then challenged the Review Board's decision through a petition for judicial review; the petition was denied. In this appeal, we consider whether the district court correctly denied Century Steel's petition, based on Century Steel's assertion that its violation was not "willful." Because what constitutes a "willful violation" in the occupational safety and health context is an issue of first impression in Nevada, we first define that term. We conclude that an employer commits a "willful violation" when it acts in an intentional, deliberate, knowing, and voluntary manner and the action is taken with either intentional disregard or plain indifference to the relevant requirements. Because the Review Board's conclusion that Century Steel willfully violated a workplace safety regulation is supported by substantial evidence, we affirm the district court's order denying judicial review.

## FACTS AND PROCEDURAL HISTORY

Paul Graham, an ironworker employed by Century Steel, suffered a fatal 90-foot fall during the construction of the Mandalay Bay Convention Center in Clark County, Nevada. Graham's death prompted an inspection by the State's Division of Industrial Relations, specifically, the respondent Occupational Safety and Health

Section, n/k/a the Nevada Occupational Safety and Health Administration (NOSHA). After its inspection, NOSHA cited and fined Century Steel $56,000 for willfully violating two subsections of the federal fall protection regulation: 29 C.F.R. § 1926.760(a)(1) and (b)(2).[1] This federal regulation is part of the federal steel erection standards and is deemed to be the fall protection standard in Nevada, as the State has not adopted an alternative standard.[2]

29 C.F.R. § 1926.760(a)(1) sets out the general fall protection requirements:

[E]ach employee engaged in a steel erection activity who is on a walking/working surface with an unprotected side or edge more than 15 feet (4.6 m) above a lower level shall be protected from fall hazards by guardrail systems, safety net systems, personal fall arrest systems, positioning device systems or fall restraint systems.

In citing Century Steel for willfully violating this regulation, NOSHA referenced three particular instances: (1) Graham's fatal 90-foot fall, which resulted from the absence of a proper fall protection system; (2) a Century Steel employee walking an I-beam approximately 59 feet above the next level without a proper fall protection system the day after Graham's fatal fall and in the same area; and (3) another employee exiting an aerial lift onto an I-beam approximately 59 feet above the next level without a proper fall protection system approximately a week after Graham's fatal fall.

29 C.F.R. § 1926.760(b)(1) specifically applies to connectors, ironworkers who erect steel beams or columns and initially connect them to an existing structure, and requires them to be protected from fall hazards of more than two stories or 30 feet above a lower level, whichever is less, in accordance with the general fall protection requirements of 29 C.F.R. § 1926.760(a)(1).[3] In citing this regulation, NOSHA noted that Century Steel had failed to ensure that a proper fall protection system was provided and utilized by its employees.

Century Steel contested its citation, maintaining that if it committed any violations, they were not "willful," but only "serious." The Review Board conducted a hearing in which the parties offered

---

[1]Violations are categorized as nonserious, serious, or willful/repeated. *See* NRS 618.625, 618.635, and 618.645. In addition to the two willful violations, NOSHA cited Century Steel for two serious violations, but the Review Board dismissed them, and they are not at issue in this appeal.

[2]*See* NRS 618.295(8).

[3]At heights over 15 and up to 30 feet, connectors are to be provided with fall protection systems and to wear the equipment necessary to use the systems, but they are not required to utilize them. *See* 29 C.F.R. § 1926.760(b)(3).

conflicting testimony as to whether Century Steel willfully committed the violations in question. The Review Board upheld the NOSHA citations, determining that NOSHA had properly classified Century Steel's violations as willful. The district court subsequently denied Century Steel's petition for judicial review, and Century Steel now appeals.

## DISCUSSION

Appellant Century Steel argues that (1) the Review Board confused "willful" with "serious" during the hearing and erased the distinction between the two, thereby applying an idiosyncratic definition of willfulness when determining the gravity of the violations; and (2) substantial evidence did not support the Review Board's determination of willfulness. The first issue is a question of law, while the second issue is a question of fact, and our standard of review, as set forth below, necessarily turns on the nature of these issues.[4]

### Willfulness

Unlike a serious violation, a willful violation in the occupational safety and health context is not defined by the Nevada Revised Statutes; it is only mentioned. Construction of a statute, including its meaning and scope, is a question of law, which this court reviews de novo.[5] We may undertake an independent review of an administrative construction of a statute.[6]

In defining a "serious violation," NRS 618.625(2) states,

> [A] serious violation exists in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations or processes which have been adopted or are in use in that place of employment unless the employer did not and could not, with the exercise of reasonable diligence, know of the presence of the violation.

---

[4]*Southern Nevada Op. Eng'rs v. Labor Comm'r*, 121 Nev. 523, 527-28, 119 P.3d 720, 724 (2005) (explaining that the standard of review of an administrative decision depends on whether the issues are deemed questions of law or fact).

[5]*Mineral County v. State, Bd. Equalization*, 121 Nev. 533, 535, 119 P.3d 706, 707 (2005); *State, Dep't of Taxation v. DaimlerChrysler*, 121 Nev. 541, 543, 119 P.3d 135, 136 (2005).

[6]*Southern Nevada Op. Eng'rs*, 121 Nev. at 528, 119 P.3d at 724; *State, Bus. & Indus. v. Granite Constr.*, 118 Nev. 83, 86, 40 P.3d 423, 425-26 (2002); *American Int'l Vacations v. MacBride*, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983).

By contrast, NRS 618.635 prescribes the penalty for a willful violation but does not define what constitutes such a violation or explain how a willful violation differs from a serious violation. Specifically, NRS 618.635 states,

> Any employer who willfully or repeatedly violates any requirements of this chapter, any standard, rule, regulation or order promulgated or prescribed pursuant to this chapter, may be assessed an administrative fine of not more than $70,000 for each violation, but not less than $5,000 for each willful violation.

Although it does not define what is a willful violation, NRS 618.635 is virtually identical to 29 U.S.C. § 666,[7] a federal statute. Previously, we have noted that

> "[w]hen a federal statute is adopted in a statute of this state, a presumption arises that the legislature knew and intended to adopt the construction placed on the federal statute by federal courts. This rule of [statutory] construction is applicable, however, only if the state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent."[8]

Here, the state and federal statutes are nearly identical, and the state statute does not reflect a legislative intent contrary to the federal statute. Therefore, we presume that the Legislature intended to adopt the construction of "willful" placed on the federal statute by federal courts. As a result, we draw upon the large body of federal case law defining what constitutes a "willful violation":

> Whether a violation is willful is a fact-sensitive question, and it asks whether the employer acted in an intentional, deliberate, knowing, and voluntary—as distinguished from accidental—manner, and if the action is taken with either intentional disregard of or plain indifference to the requirements of the [statute].[9]

---

[7]29 U.S.C. § 666(a) states:

> Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter may be assessed a civil penalty of not more than $70,000 for each violation, but not less than $5,000 for each willful violation.

[8]*State, Bus. & Indus.*, 118 Nev. at 88, 40 P.3d at 426 (quoting *Sharifi v. Young Bros., Inc.*, 835 S.W.2d 221, 223 (Tex. App. 1992) (citation omitted)).

[9]61 Am. Jur. 2d *Plant and Job Safety* § 73, at 630 (2002) (footnote omitted) (citing *F. X. Messina Const. Corp. v. Occupational S. & H. R. C.*, 505 F.2d 701 (1st Cir. 1974); *Universal Auto Radiator Mfg. Co. v. Marshall*, 631

Although Century Steel claims that the Review Board confused "willful" and "serious" at the hearing and applied an idiosyncratic definition of willfulness, the Review Board recited the proper willfulness standard in both its decision and final order. Furthermore, at oral argument, Century Steel acknowledged that the federal standard was the construction the Review Board used in its decision and final order. Accordingly, we conclude that the Review Board applied the correct willfulness standard.

## Substantial evidence

Next, Century Steel argues that substantial evidence did not support the Review Board's determination of willfulness. As noted above, a willfulness determination is a fact-sensitive inquiry.[10] "An administrative fact-based determination is entitled to a deferential standard of review."[11] We will review evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of discretion.[12] Our review is limited to the evidence contained in the record, and we will not substitute our judgment for that of the agency as to the weight of the evidence on questions of fact.[13] We simply review the record for substantial evidence, which is evidence that a reasonable person could accept as adequate to support a conclusion.[14] Despite the conflicting evidence presented to the Review Board regarding Century Steel's violations, we conclude that substantial evidence supports the Review Board's determination that the violations were willful.

### First violation

Regarding the first instance under the first violation, Graham's fatal fall, NOSHA Safety Specialist III Randy Schlect testified at

---

F.2d 20 (3d Cir. 1980); *Intercounty Const. Co. v. Occupational S. & H. R. Com'n*, 522 F.2d 777 (4th Cir. 1975); *Georgia Elec. Co. v. Marshall*, 595 F.2d 309 (5th Cir. 1979); *Donovan v. Capital City Excavating Co., Inc.*, 712 F.2d 1008 (6th Cir. 1983); *U.S. v. Pitt-Des Moines, Inc.*, 168 F.3d 976 (7th Cir. 1999); *Western Waterproofing Co., Inc. v. Marshall*, 576 F.2d 139 (8th Cir. 1978); *Nat. Steel, Etc. v. Occupational S. & H. R. Com'n*, 607 F.2d 311 (9th Cir. 1979)).

[10]*See National Engineering & Contracting Co. v. Herman*, 181 F.3d 715, 721 (6th Cir. 1999).

[11]*Southern Nevada Op. Eng'rs*, 121 Nev. at 527-28, 119 P.3d at 724.

[12]*Installation & Dismantle v. SIIS*, 110 Nev. 930, 932, 879 P.2d 58, 59 (1994).

[13]*Id.*; *Nevada Serv. Employees Union v. Orr*, 121 Nev. 675, 678-79, 119 P.3d 1259, 1261 (2005); NRS 233B.135(3).

[14]*Nevada Serv. Employees Union*, 121 Nev. at 679, 119 P.3d at 1261-62.

the hearing that he had observed Graham's body and examined his equipment. Although Graham was wearing a harness with a lanyard, he had not been tied off.[15] Furthermore, Schlect confirmed that no static line had been installed on the I-beam from which Graham fell and ascertained that Graham did not have a beam clamp, a choker,[16] or an eye bolt to anchor him to the beam. According to Schlect, a Century Steel foreman acknowledged to him that there were supposed to be cantenary lines on the I-beam from which Graham fell, but they had not been installed.[17] Also, despite the foreman's testimony that chokers were readily available, were all over the site, and that Graham had a choker with him that day, Debbie Austin, Schlect's supervisor, testified that when she examined Graham's equipment at the coroner's office, she found no choker.

The second instance under the first violation took place the day after Graham's fatal fall, but in the same area. Schlect testified that he witnessed a Century Steel employee walking along an exterior I-beam without proper fall protection, approximately 59 feet above the roof of an existing building. Schlect testified that when a Century Steel supervisor on the ground saw him approaching with his NOSHA hardhat, the supervisor waved to the employee. Schlect interpreted the gesture as an instruction to "tie off" or "belt off" and testified to confirming this with the supervisor. At the hearing, the supervisor hypothesized that the motion could have meant a number of other things, but he did not specify further. The Review Board drew the inference that absent the NOSHA inspector, the supervisor would not have signaled the employee to tie off. Schlect testified that although the employee possessed a harness and lanyard, which he used to wrap the I-beam once he reached his work location, he did not utilize any fall protection in moving to that location. Schlect testified that he was unaware of any disciplinary action taken against the employee.

The third instance under the first violation took place approximately a week after Graham's fatal fall. While conducting a more comprehensive inspection of the workplace, Schlect observed another Century Steel employee exiting an aerial lift without utilizing fall protection while exposed to a 59-foot fall. Schlect asked Century Steel's safety director, who was accompanying him, why they

---

[15]According to testimony from the Review Board hearing, to "tie off" or "belt off" means to use a lanyard or belt to connect a worker's harness to something that could hold the worker should he fall.

[16]According to testimony from the Review Board hearing, a choker is a piece of wiring that wraps around an I-beam. When utilized with a "come-along" device, a choker offers mobility to a person tethered to an I-beam.

[17]According to testimony from the Review Board hearing, a cantenary line is a horizontally strung cable on which a person can "belt off" and be protected from a fall.

were still seeing such issues a week after a fall fatality. According to Schlect, the safety director said, ''I know what you're saying,'' but that some workers did not want to listen. The safety director then called the employee down and fired him. However, Schlect observed the fired worker on-site several days later. According to Schlect, the employee stated that Century Steel had not given him any fall protection retraining upon his rehiring.

### Second violation

The lone instance cited under the second violation took place the day after Graham's fall, and in the same location. Schlect and his supervisor, Austin, were being accompanied by Century Steel's project manager and its safety director. Both Schlect and Austin testified to seeing two employees erecting an I-beam without fall protection, while at times exposed to a 90-foot fall. The employees wore harnesses and lanyards but were not utilizing them. There was also a cantenary line, which had not been present on the day of the fatality, but it too was not being utilized. According to Schlect and Austin, the Century Steel officials were standing next to them and looking in the same direction as the two employees, but neither said anything about the employees' lack of fall protection. Schlect and Austin further testified that they were unaware of any disciplinary action taken against either of the two employees.

Based on the evidence in the record, we conclude that substantial evidence supports the Review Board's determination that Century Steel committed willful violations of the relevant fall protection regulation. The evidence in the record indicates that in the weeks following a fall fatality, NOSHA inspectors observed three instances in which Century Steel employees lacked proper fall protection. Some of these instances took place in the presence of Century Steel supervisory personnel, who either knowingly allowed such violations until they realized NOSHA was present or failed to take corrective action altogether. Although some Century Steel personnel offered conflicting testimony at the Review Board hearing about these instances, the weight and credibility to be accorded to this evidence and these witnesses are within the province of the Review Board. Given the deferential standard of review and the evidence in the record, we conclude that the Review Board did not err in determining that Century Steel intentionally disregarded or was plainly indifferent to the fall protection requirements.[18]

---

[18]We have also considered Century Steel's arguments that: (1) the Review Board improperly excluded evidence from the hearing, and (2) NOSHA violated Century Steel's free speech rights by impermissibly punishing it for the anti-fall protection regulation attitude expressed by its supervisors at the hearing. However, we conclude that they lack merit.

## CONCLUSION

A willful violation exists in a place of employment if an employer acts in an intentional, deliberate, knowing, and voluntary manner, and if the action is taken with either intentional disregard of or plain indifference to the relevant safety requirements. Because substantial evidence supports the Review Board's determination that Century Steel committed two willful violations of the federal fall protection regulation, we conclude that the district court did not err in denying Century Steel's petition for judicial review. Accordingly, we affirm the judgment of the district court.